School Committee of Lowell *vs.* Vong Oung & others.[1]

No. 07-P-184.

Middlesex. December 5, 2007. - September 25, 2008.

Present: Gelinas, Smith, & Sikora, JJ.[2]

*School and School Committee,* Termination of employment, Arbitration. *Arbitration,* School committee, Authority of arbitrator, Arbitrable question. *Public Policy.*

Discussion of the standard of review applicable in an action to review an arbitration award. [703-704]

An arbitrator possessed authority under G. L. c. 71, § 42, to review, for substantive and procedural errors, a school superintendent's dismissal of three teachers for inadequate fluency in English, and also possessed authority to reinstate the teachers if the school committee failed to meet its burden of proof. [704-705]

This court concluded that, absent a showing of fraud, an arbitrator's decision to exclude from evidence in an arbitration hearing certain test results was beyond judicial review, where the arbitrator had rational reasons for excluding the results. [705-707]

This court declined to resolve the validity of three grounds of an arbitration award that arguably trespassed into considerations of public policy, where those grounds were gratuitous to the award. [707-708]

Civil action commenced in the Superior Court Department on April 7, 2006.

The case was heard by *Christine M. McEvoy,* J.

*James P. Hall* for the plaintiff.

*James L. Messenger* for the defendants.

*Christopher DeMayo & Jeffrey S. Strom,* for Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association & others, amici curiae, submitted a brief.

Sikora, J. In October of 2003 the superintendent of the Low-

---

[1] Vandy Duch and Pedro Espada.

[2] Justice Gelinas participated in the deliberation on this case prior to his retirement.

ell public schools terminated three teachers for "failure to demonstrate fluency in English." None of the teachers had been born in the United States: Vong Oung[3] and Vandy Duch grew up in Cambodia, and Pedro Espada in Puerto Rico. The School Committee of Lowell (Committee) now appeals from the judgment of the Superior Court confirming the arbitration award reinstating all three teachers with full back pay and related benefits. We affirm.[4]

1. *Background.* By a referendum vote in 2002, the Massachusetts electorate approved the general elimination of bilingual education in Massachusetts public schools. General Laws c. 71A, inserted by St. 2002, c. 386, § 1, implements the referendum: it mandates that "all children shall be placed in English language classrooms," c. 71A, § 4, conducted by teachers "fluent and literate in English," c. 71A, § 2(*b*). The pertinent Department of Education (DOE) regulations require school district superintendents to "provide annually to the [DOE] a written assurance that teachers of English language classrooms . . . are literate and fluent in English." 603 Code Mass. Regs. § 14.05(1) (2003). A teacher's fluency is to be "determined through one or more of the following methods: (a) classroom observation and assessment by the teacher's supervisor, principal, or superintendent; or (b) an interview and assessment by the teacher's supervisor, principal, or superintendent; or (c) the teacher's demonstration of fluency in English through a test accepted by the Commissioner of Education; or (d) another method determined by the superintendent and accepted by the Commissioner." 603 Code Mass. Regs. § 14.05(3) (2003).

---

[3]Alternate spellings of Vong Oung's name appear in the record.

[4]We acknowledge the amicus brief filed by the Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association; Mass English Plus Coalition; Multicultural Education Training and Advocacy, Inc.; Massachusetts Immigrant and Refugee Advocacy Coalition; Southeast Asia Resource Action Center; Puerto Rican Legal Defense and Education Fund, Inc.; Harry H. Dow Memorial Legal Assistance Fund; Boston Asian Youth Essential Service; Irish Immigration Center; Massachusetts Coalition for Equitable Education; Children's Law Center of Massachusetts; Juvenile Justice Center; Suffolk Law School; Citizens for Public Schools; The Union of Minority Neighborhoods; American Civil Liberties Union of Massachusetts; National Lawyers Guild, Massachusetts Chapter; Jewish Alliance for Law & Social Action; Fair Housing Center of Greater Boston; and Community Change, Inc.

The DOE's March 27, 2003, written memorandum ("DOE guidelines") to all school superintendents states that *"[a] test is needed only in cases where the teacher's English fluency is not apparent through classroom observation and assessment or interview and assessment"* (emphasis in original). If a teacher fails to demonstrate fluency through assessments by classroom observation or interview, the DOE recommends the administration of the American Council on the Teaching of Foreign Languages (ACTFL) Oral Proficiency Interview (OPI) for assessment of the teacher's language skills. The DOE guidelines state also that, in the event that a school district chooses to employ an assessment tool other than the OPI, it should contact the DOE to ascertain whether the alternative would be "accepted by the Commissioner."

The Committee's certification of its teachers deviated from the DOE regulations and guidelines in several particulars: (1) it bypassed the processes of assessment by classroom observation or by interview; (2) it allowed a teacher to demonstrate fluency by means of a passing score on the so-called SPEAK test[5] without administration of the OPI and without approval of the SPEAK test by the DOE; and (3) it presumed that all native English speakers who "were educated in English in mainland US schools for at least [four] years during their K-12 education" were fluent in English and thus exempt from assessment.

Prior to the three teachers' termination in 2003, representatives of the Lowell school district had evaluated them on multiple occasions and had awarded them satisfactory ratings[6] in every category, including the use of appropriate instruction and ques-

---

[5]The record indicates that the SPEAK test requires the examinee to answer a set of prerecorded questions; that it records the examinee's answers; and that graders then listen to those answers and assign evaluations of fluency.

[6]The possible ratings were (1) satisfactory: "[t]he employee's performance meets or exceeds professional standards and position requirements"; (2) unsatisfactory: "[t]he employee's performance is below the level of acceptability; improvement plan needs to be formulated"; and (3) unknown: "[n]o evidence collected regarding this item during the evaluation period."

One school evaluator who had observed Vong Oung in 2003 in the classroom setting determined that his "English language skills [were] not sufficient to consistently insure student learning" and "ha[d] a negative impact on [his] students' ability to make accurate sense of [his] expectations and [his] instruction." The evaluator cited specific examples of how Vong Oung's

tioning techniques, proper monitoring of students' understanding of the curriculum, and clear communication of learning goals. In the fall of 2003, the Committee determined that the teachers were not exempt from the fluency assessment. The teachers took the SPEAK test but did not achieve passing scores. They then took the OPI test. Oung and Duch each failed it three times, and Espada failed it twice. The superintendent determined that she could not attest to the teachers' fluency in English as required by the DOE regulations, and in October, 2003, she terminated their employment.

At the time, all three had the status of professional teachers and the coverage of a collective bargaining agreement. General Laws c. 71, § 42, as appearing in St. 1993, c. 71, § 44, does not permit termination of a teacher with professional status "except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or . . . other just cause." The statute confers upon a dismissed teacher the right to "seek review of a dismissal decision . . . by filing a petition for arbitration with the commissioner." *Ibid.* At the arbitration proceeding, the school committee has the burden to show cause for termination. *Ibid.* If the arbitrator finds that "the dismissal was improper," he or she "may award back pay, benefits, reinstatement, and any other appropriate non-financial relief or any combination thereof." *Ibid.*

The superintendent terminated all three teachers pursuant to G. L. c. 71, § 42, for "other just cause." The teachers invoked arbitration. The arbitrator instructed the Committee that the admission of the OPI score reports into evidence without affording the teachers an opportunity to cross-examine the OPI graders would violate the teachers' procedural rights of meaningful cross-examination. The Committee obtained subpoenae from the Superior Court ordering Language Testing International (LTI), the company administering the OPI test, "immediately [to] produce the names and addresses of all raters and graders for the various OPI tests of" the teachers; "to produce audio tapes of the . . .

language shortcomings made his instruction less effective. The arbitrator did not find this evaluation credible because during the previous eight years the same evaluator had not once indicated that Vong Oung had difficulty with communication in English.

OPI tests"; and "to send a representative who is a nationally recognized expert in the use and administration of the OPI tests to be a witness [at] the arbitration hearing."

The graders, who lived over one hundred miles from Lowell, did not comply with the Committee's request to testify at the arbitration hearing.[7] The arbitrator found that the graders' "qualifications and training in OPI test administration and rating ha[d] a profound impact on the reliability of the OPI test results" and on the ultimate determination of the teachers' inadequate fluency in English. He ruled that the audio recordings of the teachers' OPI tests and the expert testimony of an LTI employee, who admittedly had not administered the test, would violate the teachers' right to cross-examine adverse witnesses. He therefore excluded the OPI scores.[8] He excluded the OPI scores also on

---

[7]A letter from LTI to the DOE, dated July 25, 2005, asserted LTI's position:

"Please take notice that effective immediately LTI, Inc. hereby intends to suspend all testing services provided for school districts in Massachusetts as part of the Commonwealth's teacher certification process. . . . [A] new legal issue has arisen . . . whereby LTI has received a subpoena to appear before an arbitrator involving Lowell's firing of three teachers who failed the [OPI] . . . . Despite our efforts to work with the [DOE] to resolve our concerns over protecting LTI's intellectual property and test security . . . we again are confronted with the potential for irreparable damage to the test.

" . . .

"All of the raters who perform services for LTI are independent contractors, not employees. If we are forced to present our raters for such 'second-guessing' we are faced with the certainty of having them refuse to continue to perform services for us. LTI cannot physically force the affected raters to comply with that subpoena, nor will we encourage any of our raters to agree to appear. Equally outrageous, we further understand that the arbitrator intends to play the tape of each test-taker and apparently question the rater about the scoring based on those tapes . . . . [S]uch tapes are not available to be disclosed because of copyright and test security concerns."

[8]The arbitrator relied in part on the interpretation of G. L. c. 71, § 42, in *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 23 (1st Cir. 1999), that the due process clause of the Fourteenth Amendment to the United States Constitution affords a tenured public employee the right to "an explanation of the employer's evidence, and an opportunity to present his [or her] side of the story." *Ibid.*, quoting from *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 546 (1985).

the ground that the Committee had failed to evaluate the teachers' fluency by classroom observation or interview before administering the OPI, as the DOE guidelines required.

The arbitrator admitted in evidence the results of the SPEAK test because the Committee produced its graders for cross-examination. He found that the Committee had made no attempt to have the SPEAK test accepted by the DOE as a valid assessment tool. Despite the Committee's failure to meet this threshold requirement, he addressed the results of the test. He found that the Committee had failed to show that the SPEAK test results adequately reflected the teachers' fluency, because the graders and the Committee had failed to follow proper procedures in the administration of the test and in the evaluation of its results.[9]

The exclusion of the OPI scores caused the Committee's failure to carry its burden of proof of the teacher's lack of fluency in English and therefore of their disqualification by just cause within the meaning of G. L. c. 71, § 42. As an independent ground of decision, the arbitrator added that even if valid OPI scores had established a lack of fluency, the Committee's confinement of fluency assessment to nonnative English speakers had improperly discriminated against the teachers in violation of G. L. c. 151B, § 4.

2. *Discussion.* The Committee argues on appeal that the arbitrator exceeded his authority because a superintendent's determination of inadequate fluency and resulting dismissal is not an arbitrable subject matter; because he improperly excluded the OPI scores; and because he violated State law and public policy. We address each contention in turn.

a. *Standard of review.* "Absent proof of one of the grounds

---

[9]For example, some graders testified that they had not listened to calibration samples before listening to and grading each examination and that they had downgraded answers by more points than mandated by the SPEAK training kit. The arbitrator credited expert testimony that the test did not simulate the teaching environment because of lack of questions within the subjects taught by the teachers. Some of the teachers took the test more than once within a six-week period, and the results from the second test varied widely from those of the first. The arbitrator determined that "such a variance should not exist relative to an analysis of English language proficiency in six (6) weeks time." By reason of these and other breaches of test protocols, the arbitrator concluded that the individual scores varied with the identity of the grader and were thus unreliable.

enumerated in G. L. c. 150C, § 11, to vacate arbitral awards, we are strictly bound by [an] arbitrator's factual findings and conclusions of law, even if they are in error." *School Comm. of Pittsfield* v. *United Educators of Pittsfield,* 438 Mass. 753, 758 (2003), citing *Lynn* v. *Thompson,* 435 Mass. 54, 61-62 (2001), cert. denied, 534 U.S. 1131 (2002).[10] However, "the question whether an arbitrator exceeded his or her authority is always subject to judicial review." *Board of Higher Educ.* v. *Massachusetts Teachers Assn., NEA,* 62 Mass. App. Ct. 42, 47 (2004). See G. L. c. 150C, § 11(*a*)(3).

b. *Arbitrator's authority.* General Laws c. 71, § 42, permits an arbitrator to overturn a superintendent's or principal's disciplinary personnel decision on substantive or procedural grounds. See *School Comm. of Pittsfield* v. *United Educators of Pittsfield, supra* at 760-762; *Board of Higher Educ.* v. *Massachusetts Teachers Assn., NEA, supra* at 48.

The Committee attempts to distinguish the dismissal of a teacher for substandard language skills from the dismissal for one of the causes enumerated in G. L. c. 71, § 42. It argues that because G. L. c. 71A, §§ 2(*b*) and 4, mandate that teachers be fluent in English and because 603 Code Mass. Regs. § 14.05(1) imposes the obligation on superintendents to provide a written assurance that each teacher is in fact fluent in English, the decision to dismiss a teacher who fails to meet the fluency requirement is the "only option under the law" and thus is not an arbitrable subject matter intended by G. L. c. 71, § 42.

This argument lacks merit because it presupposes that the teachers are not fluent in English. General Laws c. 71, § 42,

---

[10]The Committee confuses the standard of review applicable to a decision of an administrative agency under G. L. c. 30A, § 14, with the much more restrictive standard of review governing the decision of an arbitrator. It asserts that the teachers cannot justifiably contend that their termination was "arbitrary and capricious." See *Lynn* v. *Thompson, supra* at 62 n.13 ("We reject the suggestion that we should enlarge the scope of our review of arbitration decisions in cases involving public entities or public employees").

General Laws c. 150C, § 11(*a*), in the main permits the Superior Court to vacate an award only upon grounds of (1) corruption, fraud, or other undue means; (2) an arbitrator's evident partiality, corruption, or misconduct; (3) excess of authority or decision compelling a violation of law; (4) refusal of justified postponement; refusal to hear material evidence; and (5) the absence of an arbitration agreement.

protects teachers with professional status from dismissal for reasons ostensibly authorized by the statute, but deficient in fact or violative of the teachers' substantive and procedural rights under a collective bargaining agreement. The Committee concedes that the superintendent terminated the three teachers for "other just cause" under G. L. c. 71, § 42. Pursuant to that statute and the teachers' collective bargaining agreement, the arbitrator possessed authority to review the dismissal decision for substantive and procedural errors and authority to reinstate the teachers if the Committee had failed to meet its burden of proof. The issue here is fundamentally different from the one left open by the Supreme Judicial Court in *School Dist. of Beverly* v. *Geller*, 435 Mass. 223 (2001): whether an arbitrator has the authority to reinstate a teacher, and thus to "substitute[] his [or her] own judgment as to proper discipline for that of the [school] district," if the school district establishes cause under G. L. c. 71, § 42. See *School Dist. of Beverly* v. *Geller*, *supra* at 225 (Cordy, J., concurring). Here the question is whether, in the first place, the school authority has established such cause.

c. *Factual and legal grounds of the arbitrator's decision.* The arbitrator rested his decision upon multiple grounds: (1) the exclusion of the OPI failing scores and the resulting elimination of the Committee's proof of inadequate fluency; (2) the failure of the Committee under the DOE guidelines to exhaust the prerequisite methods of the classroom observation and assessment or interview and assessment of fluency by the superintendent, principal, or supervisor before imposition of a testing mechanism; (3) exclusion of the SPEAK test failing scores as proof of inadequate fluency for lack of approval of the examination by DOE and for commission of numerous violations of its protocols by its administrators and graders; (4) the Committee's imposition of fluency testing upon nonnative English speakers but not upon native English-speaking teachers (those educated in the mainland United States for at least four of their years from kindergarten through grade twelve) in supposed violation of the prohibition of G. L. c. 151B, § 4(1), against employment discrimination upon the basis of national origin; (5) the conclusion that the personal qualities of the three dismissed teachers rendered them positive

role models likely to elevate the performance of their students[11]; and (6) the conclusion that a failure of fluency did not compel the sanction of dismissal but rather the remedy of retraining or reassignment of the teachers within their areas of certification by reason of their seniority. He appears to have reached each one as an independently adequate basis for his award of reinstatement.

Several grounds lie beyond the scope of judicial review. The Committee argues that the exclusion of the OPI scores amounts to a "refus[al] to hear evidence material to the controversy" reviewable under G. L. c. 251, § 12(*a*)(4), inserted by St. 1960, c. 374, § 1. That provision does not bestow reviewability here for two reasons. The OPI scores lack materiality because the Committee lacked authority to substitute them for the mandated priority of classroom evaluation and face-to-face interviews.[12] Also, the arbitrator did not unreasonably refuse to admit them, but excluded them rationally because the teachers could not fairly controvert them without information from the inaccessible test administrator. In the absence of a showing of fraud, arbitral errors

---

[11]Vong Oung had fled the Khmer Rouge regime in Cambodia as a teenager, graduated with high ranking from public high school in Maine, and achieved a bachelor of arts degree in mathematics from a State college. He had taught public high school and middle school bilingual and mainstream classes for approximately nine years at the time of his termination in 2003. Until 2003 he had received satisfactory evaluations of his teaching performance (including communication skills).

Vandy Duch also had fled from Cambodia. He moved to Lowell in 1984, and taught in its public school system from 1985 until termination in 2003; he taught mostly math and science courses to fifth and sixth graders in both bilingual and mainstream classrooms. In 1994 he achieved his degree at a four-year college. His evaluations were consistently satisfactory; they had presented no questions of his ability to communicate in English.

Pedro Espada graduated from high school in Puerto Rico, enlisted in the United States Army, served in Vietnam, and advanced to the rank of sergeant. He achieved his bachelor of arts degree in 1977 from the Inter American University in Puerto Rico. In 1994 he moved to Lowell and began teaching bilingual classes in the public school system. He taught predominantly in English. Throughout his nine years of teaching (consisting of biology instruction at the middle school level), he received consistently positive general evaluations.

[12]The primacy of the classroom observation and personal interview methods of evaluation mandated by DOE in its regulation and guidelines appears to rest upon an important rational premise: the greater reliability of those procedures than the subordinated tests to demonstrate over-all fluency in the face-to-face setting of the classroom.

School Committee of Lowell v. Vong Oung.

of law or fact remain beyond judicial review. *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 674 (2002), citing *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990).

For the same reasons, the exclusion of the SPEAK test results did not constitute a refusal to receive material information within the meaning of c. 251, § 12(*a*)(4). The results would not have cured the Committee's failure to employ the mandated primary evaluation procedures and therefore lacked materiality. The exclusion of them did not constitute an arbitrary refusal but rather a reasonable precaution against unreliability. Finally, the Committee's contention that the arbitral award includes excessive back pay without a subtraction for required mitigation efforts constitutes an issue of law and fact beyond the scope of our authority of review.

d. *The public policy limitation.* The statutory limitation upon judicial review of arbitration decisions presumes the commitment of an issue to arbitration by a valid bargaining agreement. In Massachusetts, a governmental body cannot validly bargain away its responsibility for the public health, safety, and welfare. Elements of that inalienable duty are not delegable to contractual arbitration. An arbitrator cannot acquire authority reserved "by statute, by tradition, or by common sense . . . to the sole discretion of the public employer so as to preserve the intended role of the governmental agency and its accountability in the political process." *Worcester* v. *Labor Relations Commn.*, 438 Mass. 177, 181 (2002), quoting from *Lynn* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 172, 178 (1997). See *School Dist. of Beverly* v. *Geller*, 435 Mass. at 230 (Cordy, J., concurring), quoting from *School Comm. of Hanover* v. *Curry*, 3 Mass. App. Ct. 151, 156 (1975), *S.C.*, 369 Mass. 683 (1976) (upon "determinations . . . of public law, the arbitrator possesses no special expertise . . .").[13] See *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 603 (2000), and cases

---

[13]"The fact that an issue has been submitted to an arbitrator for decision and that an award has been given does not preclude further judicial review where statutory policies have been affected." *School Comm. of Hanover* v. *Curry, supra* at 156. See *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 57 (1974) ("the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land").

cited (arbitrators do not have authority to weigh the public policy implications of their awards; only the matters encompassed by the enabling collective bargaining agreement and related contracts).

In matters of employee dismissal, the reviewing court will inspect an arbitral award for the violation of a public policy limitation by three criteria: (1) whether the policy is defined, dominant, and visible in specific law sources, and not merely inferable from a general consideration of public interests; (2) whether the discharged employee has engaged in disfavored conduct integral to the performance of his duties; and (3) whether the deficient or offensive conduct would typically require dismissal. *Id.* at 604-605, and cases cited.

In the present circumstances the Committee contends that the award of reinstatement violates the public policy of mandatory fluent English language instruction embodied in G. L. c. 71A, §§ 2(*b*) and 4, 603 Code Mass. Regs. § 14.05, and the DOE guidelines. Three of the grounds offered by the arbitrator arguably trespass into considerations of public policy: (1) the unanalyzed conclusion that the Committee's decision not to investigate the fluency of native English-speaking teachers constituted employment discrimination against nonnative English-speaking teachers in violation of G. L. c. 151B, § 4(1); (2) the conclusion that the personal qualities and histories of the three teachers would so serve their students as to override problems of fluency; and (3) the conclusion that the Committee could not dismiss, but must retrain and reassign, the three teachers despite any fluency shortcomings.

However, we need not resolve their validity. Those grounds are gratuitous to the award. Their invalidity would not require its reversal. The award would remain effective by reason of the limited, independent, and unreviewable determinations of fact and law undermining the Committee's evaluation of the teachers' inadequate fluency.

3. *Conclusion.* We therefore affirm the judgment of the Superior Court confirming the arbitration award.

*So ordered.*