NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-817                                          Appeals Court


           JAMES DEVER  vs.  DAVID L. WARD & others.[1]


                       No. 16-P-817.

      Plymouth.     May 3, 2017. - September 7, 2017.

          Present:  Green, Massing, & Shin, JJ.


"Anti-SLAPP" Statute.  Constitutional Law, Right to petition
     government, Retroactivity of judicial holding.  Practice,
     Civil, Motion to dismiss.  Abuse of Process.


     Civil action commenced in the Superior Court Department on
June 9, 2015.

     A special motion to dismiss was heard by Raffi N. Yessayan,
J.


     Thomas A. Dougherty, III, for the plaintiff.
     Curtis B. Dooling for Aaron Foley & others.
     Timothy M. Pomarole for David L. Ward & others.


     MASSING, J.  The plaintiff, James Dever, appeals from an

order allowing the defendants' special motion to dismiss his

amended complaint under the "anti-SLAPP" statute.  See G. L.

---

[1] Daniel Rabinovitz; Michaels, Ward & Rabinovitz, LLP;
Daniel Michael Joyce; Moors & Cabot Investments, Inc.; and Aaron
Foley.

c. 231, § 59H, inserted by St. 1994, c. 283, § 1. Although we conclude that the Superior Court judge did not err or abuse his discretion in allowing the special motion, we remand the case for further proceedings under the "augmented" framework for evaluating § 59H motions set out in Blanchard v. Steward Carney Hosp., 477 Mass. 141, 159-161 (2017) (Blanchard).

Background. We recite the facts as alleged in the plaintiff's amended complaint, supplemented by the affidavits and exhibits submitted by the parties in connection with the defendants' special motion to dismiss. See G. L. c. 231, § 59H (in determining whether to grant special motion to dismiss, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based").[2]

Dever was employed as a broker supervisor by defendant Moors & Cabot Investments, Inc. (M&C), a securities and financial planning firm. In early November, 2011, Dever was involved in a dispute with M&C and its president, defendant Daniel Joyce, over $2 million that Dever claimed was owed to him in salary and commissions. Around the same time, Dever learned

_____

[2] The defendants' affidavit of counsel properly authenticated several documents concerning the allegations in Dever's complaint. We reject Dever's assertion that the affidavit was somehow deficient, and in any event, Dever waived any such claim by failing to object to the affidavit during proceedings on the special motion. See Miller v. Miller, 448 Mass. 320, 326 (2007).

that one of M&C's employees, defendant Aaron Foley, was engaging in improper stock sales, and he reported Foley's conduct to Joyce. Shortly thereafter, on November 9, 2011, M&C fired Dever. In response, Dever filed a claim for arbitration against M&C and Joyce before the Financial Industry Regulatory Authority (FINRA), alleging breach of contract and wrongful termination.

In July, 2012, while the arbitration was pending, Joyce, Foley, and M&C's office manager reported to the Boston police that Dever had made between sixteen and nineteen threatening and harassing telephone calls to them at M&C's Boston office and on their personal cellular telephones. Joyce claimed that Dever had threatened to harm Joyce's family, the office manager said that Dever harassed and cursed him, and Foley reported that Dever had made a profanity-laced death threat.

As a result of these reports, two criminal complaints against Dever issued out of the Boston Municipal Court Department (BMC), charging him with making annoying telephone calls, see G. L. c. 269, § 14A, and threatening to commit a crime, see G. L. c. 275, § 2. The BMC also issued harassment prevention orders against Dever under G. L. c. 258E, ordering him not to contact or abuse Joyce or the office manager and to stay away from their residences and from M&C's Boston office. Issued ex parte on July 12, 2012, the harassment prevention orders were extended for one year on July 23, 2012. On August

13, 2012, Joyce and the office manager moved to voluntarily dismiss the harassment prevention orders "solely because of the jurisdictional issue" -- neither man resided in Suffolk County[3] -- and the orders were terminated.

In addition, Foley reported Dever's threats to the Hanover police department, applied for a criminal complaint in the Hingham Division of the District Court Department (District Court), and obtained an ex parte harassment prevention order. When the Hanover police contacted Dever about making these calls to Foley, Dever said that he remembered making the calls but did not remember making any threats. He claimed that he had been taking prescription medication for an injury and that his memory was cloudy as a result. The application for a criminal complaint was denied after a magistrate's hearing.

Dever moved to dismiss the BMC criminal complaints prior to arraignment for lack of jurisdiction. In his motion, Dever argued that although some of the phone calls were made to M&C's Boston office, "Joyce testified that he received the call from . . . Dever in the driveway of his home . . . in Marshfield." A BMC judge allowed the motion to dismiss on October 28, 2013.

---

[3] Although Joyce and the office manager worked in Boston, an application for a harassment prevention order must be brought in the jurisdiction where the applicant resides. See G. L. c. 258E, § 2.

Finally, Dever alleged that during the course of the FINRA arbitration the defendants, through pleadings and other communications, conveyed to the arbitrators information about Dever's threatening and harassing conduct, including copies of the criminal complaints and harassment prevention orders. The defendants communicated this information "with the sole intent of disparaging [p]laintiff and prejudicing him in the eyes of the three member arbitrator panel." According to Dever, these efforts were successful, causing the FINRA arbitrators to deny Dever's claims against the defendants, which he valued at $2.5 million, and instead to award $75,000 to Foley.

Defeated in the FINRA arbitration, Dever filed the current lawsuit in the Superior Court, naming M&C, Joyce, Foley, and their attorneys[4] as defendants. Dever's amended complaint alleged twelve counts against some or all of the defendants: civil conspiracy, fraud, defamation, libel, two counts of abuse of process, two counts of malicious prosecution, and four counts of intentional or negligent infliction of emotional distress. All of these claims were based primarily on the defendants' reporting of Dever's alleged criminal behavior to the Boston and Hanover police; seeking criminal complaints and harassment

---

[4] Dever alleged that the attorneys, defendants Ward, Rabinovitz, and their law firm, assisted Joyce and Foley in seeking and obtaining criminal and civil process and spread these matters before the FINRA arbitrators.

prevention orders in the BMC and the District Court; and "referring to and repeatedly bringing up" Dever's alleged threatening and harassing conduct, and making other disparaging comments about him, during the course of the FINRA arbitration.[5]

The defendants filed a special motion to dismiss Dever's suit under the anti-SLAPP statute. The motion judge determined that the defendants' communications to the police, the courts, and the FINRA arbitrators were petitioning activities, and that they were reasonably supported in law and fact. Dever appeals, arguing that the defendants' petitioning activity was "illegitimate" because it was "designed to intimidate, harass, annoy and influence pending civil matters." We affirm the allowance of the motion, but remand for further proceedings in light of Blanchard, 477 Mass. at 159-160.

Discussion. 1. The Duracraft framework. "The special motion procedure employs a two-stage framework." Cardno ChemRisk, LLC v. Foytlin, 476 Mass. 479, 484 (2017). First, the moving party must "make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities."

---

[5] Dever also alleged that after the magistrate's hearing in District Court, Foley's attorney, Rabinovitz, "took a boxing pose and stated [to Dever's attorney] 'drop the arbitration and my clients will drop the criminal complaints in the BMC.'"

Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-168 (1998) (Duracraft). If the moving party sustains this burden, the opposing party must show that "(1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party." G. L. c. 231, § 59H. See Duracraft, supra at 168. See also Van Liew v. Stansfield, 474 Mass. 31, 36 (2016) (Van Liew).

We address the defendants' alleged conduct under the Duracraft framework, "review[ing] the judge's decision to grant the special motion to dismiss to determine whether there was an abuse of discretion or error of law." McLarnon v. Jokisch, 431 Mass. 343, 348 (2000).

a. Petitioning activity. "'[P]etitioning' has been consistently defined to encompass a 'very broad' range of activities in the context of the anti-SLAPP statute." North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 861 (2009) (North Am. Expositions). This activity includes "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [or] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding." G. L. c. 231, § 59H. "To fall under

the 'in connection with' definition of petitioning under the anti-SLAPP statute, a communication must be 'made to influence, inform, or at the very least, reach governmental bodies -- either directly or indirectly.'" Blanchard, 477 Mass. at 149, quoting from North Am. Expositions, supra at 862.

The defendants' appeals to the police and to the courts were quintessential petitioning activity. See Van Liew, supra at 36 (application for a harassment prevention order is petitioning activity); O'Gara v. St. Germain, 91 Mass. App. Ct. 490, 497 (2017) ("When a person reports suspected criminal activity to the police, [he] is engaging in constitutionally-based petitioning activity for purposes of G. L. c. 231, § 59H") (O'Gara). Dever does not meaningfully contend otherwise; rather, he argues that the defendants' initial contact with law enforcement and their seeking criminal complaints and harassment prevention orders was "illegitimate" petitioning activity, "for the ulterior purpose of affecting the ongoing civil arbitration process." However, it is well established that in determining whether conduct is petitioning activity for the purposes of a § 59H motion, "the motive behind the petitioning activity is irrelevant." Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002). See Keystone Freight Corp. v. Bartlett Consol., Inc., 77 Mass. App. Ct. 304, 314 (2010).

Where, as here, the moving party has sought and obtained criminal process, the nonmoving party must rely on "some other conduct by the special movant, apart from merely obtaining the process, that amounted to an affirmative, subsequent misuse of the process to further the special movant's alleged ulterior purpose." Adams v. Whitman, 62 Mass. App. Ct. 850, 855 (2005). "The question here then is whether [Dever] alleges that the defendants engaged in any conduct germane to [his] abuse of process claim, apart from their invocations of process, which can provide a 'substantial basis' for [his] claim." 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 169 (2017) (477 Harrison Ave.).

Dever asserts that the defendants' introduction of the criminal complaints and harassment prevention orders into the FINRA arbitration amounted to affirmative conduct apart from merely obtaining the process. "Subsequent misuse of process, as long as it is not also petitioning activity, may . . . provide a nonpetitioning basis for a nonmoving party's abuse of process claim." Ibid. However, the motion judge concluded that the defendants' communications to the arbitrators in the course of the FINRA arbitration was petitioning activity in and of itself.

We have assumed that a party's assertions made in the course of a Department of Telecommunications and Energy arbitration proceeding are petitioning activity. See Global

NAPS, Inc. v. Verizon New England, Inc., 63 Mass. App. Ct. 600,
604 n.4 (2005).  The record before us is insufficient to
determine whether FINRA arbitration qualifies as a "governmental
proceeding" within the meaning of § 59H.[6]  However, Dever has
never argued, either in opposing the special motion in the trial
court or on appeal, that FINRA arbitration is not a governmental
proceeding.  Accordingly, the issue is not before us.  See Carey
v. New England Organ Bank, 446 Mass. 270, 285 (2006).  For the
purpose of this appeal, we have no basis to disturb the motion
judge's determination that the defendants' conduct in the FINRA
arbitration was petitioning activity.  Thus, the defendants have
met their burden of showing that Dever's complaint was based
solely on the defendants' activity.[7]

b.  Factual or legal basis.  Because Dever's complaint is
based on the defendants' petitioning activity, we turn to the

---

[6] Compare Century 21 Chamberlain & Assocs. v. Haberman, 173
Cal. App. 4th 1, 5 (2009) (California anti-SLAPP statute does
not protect participation in private contractual arbitration),
with Mallard v. Progressive Choice Ins. Co., 188 Cal. App. 4th
531, 535 (2010) (California anti-SLAPP law applies to
statutorily mandated arbitration of uninsured motorist claim
disputes).

[7] In his brief, Dever refers in passing to Rabinovitz's
attempt to use the BMC criminal complaints as leverage to coerce
Dever to drop the arbitration.  See note 5, supra.  However,
Dever does not cite any authority or make any reasoned legal
argument that this one act was a substantial basis for any of
his claims against the defendants.  "We decline to address the
plaintiff's cursory and unsubstantiated argument, as it does not
rise to the level of acceptable appellate argument."  Cameron v.
Carelli, 39 Mass. App. Ct. 81, 86 (1995).

second prong of the analysis -- whether Dever can "show, by a preponderance of the evidence, through the pleadings and affidavits, that the moving party's petitioning activities were 'devoid of any reasonable factual support or any arguable basis in law' and that the petitioning activities 'caused actual injury.'" Benoit v. Frederickson, 454 Mass. 148, 152-153 (2009), quoting from Wenger v. Aceto, 451 Mass. 1, 5 (2008) (Wenger). Other than the unsupported assertion that the defendants' petitioning activity was based on "misrepresentations" and motivated to gain advantage in the arbitration, Dever has not attempted to show that the defendants' claims against him lacked factual support. Rather, Dever argues that the defendants' petitioning activity was devoid of legal merit because the District Court denied Foley's application for criminal process and the BMC dismissed the criminal complaints against him for want of venue.

Although the magistrate in District Court declined to issue a criminal complaint on Foley's application, "[t]hat the complaint ultimately did not issue is not dispositive of the issue whether the anti-SLAPP statute protects the defendant's conduct." Wenger, supra at 7. See 477 Harrison Ave., 477 Mass. at 173 (nonmoving party cannot meet his burden solely by "demonstrating that the petitioning activities were unsuccessful"). Instead, Dever must prove by a preponderance of

the evidence that "'no reasonable person could conclude' that [Foley's] report to the [Hanover] police was supported either in fact or in law." O'Gara, 91 Mass. App. Ct. at 498. See Wenger, supra ("The critical determination is not whether the petitioning activity in question will be successful, but whether it contains any reasonable factual or legal merit at all"). The report indicates that Dever called and made a death threat to Foley, that Foley hung up, and that Dever called back six more times. Later that day Dever spoke to the Hanover police. He remembered speaking to Foley, but did not remember threatening him. Dever has failed to prove that Foley's complaint lacked an arguable basis in law or fact.

As to the BMC complaints, Dever argues that their dismissal on the basis of improper venue is sufficient to show that there was no legal basis for their issuance. Assuming (without the aid of a transcript or written findings and rationale from the judge) that the complaints were correctly dismissed for improper venue, such a dismissal does not render the complaints "devoid of any reasonable factual support or any arguable basis in law." G. L. c. 231, § 59H. The statutes at issue here, G. L. c. 275, § 2, and G. L. c. 269, § 14A, do not contain venue provisions. "The venue question, therefore, is one of common law within any limitation that art. 13 may impose." Commonwealth v. Brogan, 415 Mass. 169, 173 (1993). "One concept underlying art. 13 is

that fairness to a defendant normally requires that the defendant not be transported far away for trial but rather be tried where there is access to witnesses and evidence for the defense." Id. at 174.

Mindful of the this concept, we cannot say that petitioning the BMC for the issuance of criminal complaints -- where both the victims and the defendant worked in Boston, and at least some of the alleged threatening phone calls were made to the Boston office of M&C -- lacked any arguable basis in law or fact. Accordingly, Dever has failed to meet his burden with respect to the criminal complaints.

It follows that the defendants' representations in the FINRA arbitrations, which concerned their petitioning activity before the police and the courts, as well as Dever's conduct underlying that activity, were adequately supported by the facts. Dever's allegation that the representations were effective in influencing the FINRA panel suggests that the panel considered the representations to be at least arguably relevant to the proceedings as a matter of law.[8] The judge did not err or abuse his discretion in concluding that Dever failed to carry

---

[8] To the extent Dever claims that the arbitration panel erred in considering the criminal complaints or harassment prevention orders, such an error is beyond judicial review. See School Comm. of Lowell v. Oung, 72 Mass. App. Ct. 698, 706-707 (2008).

his burden of showing that the defendants' petitioning activity lacked a legal or factual basis.

2. Augmented Duracraft framework. Previously, where the nonmoving party could not demonstrate that the moving party's petitioning activity was devoid of any arguable basis in law or fact, a special motion would be allowed. However, because "it is often difficult [for the nonmovant] to make [this] showing," and because "such [an] inquiry is not entirely adequate to the task of determining whether the special motion should be allowed," the Supreme Judicial Court in Blanchard augmented the Duracraft framework, providing a nonmoving party with an additional basis on which to defeat a special motion. Blanchard, 477 Mass. at 156. Should the nonmovant fail to meet the "high bar," id. at 156 n.20, of proving by a preponderance of the evidence that the claim was "devoid of any reasonable factual support or any arguable basis in law," see G. L. c. 231, § 59H, "the nonmoving party may . . . meet its second-stage burden and defeat the special motion to dismiss by demonstrating in the alternative that each challenged claim does not give rise to a 'SLAPP' suit." Blanchard, supra at 160. To do so, the nonmoving party must demonstrate, considering the totality of the evidence, "that each such claim was not primarily brought to chill the special movant's legitimate petitioning activities." Ibid.

We conclude that the Blanchard decision, which was issued after oral argument but before decision of this appeal, applies to this case.[9]  "[D]ecisional law is generally applied retroactively, unless doing so would fail to protect the reasonable expectations of parties."  Shapiro v. Worcester, 464 Mass. 261, 268 (2013).  "However, in exceptional circumstances, when 'determining whether a new rule arising from decisional law should apply [only] prospectively, we look at three factors: (1) whether a new principle has been established whose resolution was not clearly foreshadowed; (2) whether retroactive application will further the rule; and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity.'"  Ibid., quoting from Keller v. O'Brien, 425 Mass. 774, 782 (1997).

Here, retroactive application is appropriate.  First, although "the Legislature passed the anti-SLAPP statute to counteract 'meritless' lawsuits brought to chill a party's petitioning activity," Blanchard, supra at 157, the Duracraft court nearly twenty years ago foreshadowed the augmented framework in Blanchard when it recognized that the anti-SLAPP

---

[9] We invited the parties to submit memoranda concerning the effect, if any, of the Blanchard decision on this case.  Both parties assumed that Blanchard applied and made arguments addressing the merits of Dever's claim under the new framework. After reviewing the memoranda, we concluded that the parties' arguments should be developed and decided in the Superior Court in the first instance.

statute "did not address concerns over its breadth and reach, and ignored its potential uses in litigation far different from the typical SLAPP suit." Duracraft, 427 Mass. at 163. Second, this new framework furthers the purpose of the anti-SLAPP statute: "to distinguish between meritless claims targeting legitimate petitioning activity and meritorious claims with no such goal." Blanchard, supra. Third, given the foregoing, retroactive application will not result in specific hardships or inequities. Finally, we note that without discussion the Supreme Judicial Court remanded both Blanchard, supra at 161, and 477 Harrison Ave., 477 Mass. at 175-176, which were issued the same day, for consideration under the augmented Duracraft framework.

Although Dever was never able to clearly articulate to us what he meant when he contended that the defendants' petitioning activity was not "legitimate," in light of the change to the Duracraft framework, he may endeavor to establish that his claims concerning the defendants' communications to the police, to the courts, and in the FINRA arbitration do not constitute a SLAPP suit. If Dever cannot meet this burden, the defendants' special motion should be allowed.

Conclusion. Although the judge did not err or abuse his discretion in allowing the defendants' special motion to dismiss, the order allowing the special motion is vacated and

remanded solely for consideration under the augmented Duracraft framework.

So ordered.