NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12150


   477 HARRISON AVE., LLC  vs.  JACE BOSTON, LLC, & another.[1]



        Suffolk.     January 5, 2017. - May 23, 2017.

  Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
                          Budd, JJ.[2]


"Anti-SLAPP" Statute.  Constitutional Law, Right to petition
     government.  Practice, Civil, Motion to dismiss.  Abuse of
     Process.  Consumer Protection Act, Unfair or deceptive act.



     Civil action commenced in the Superior Court Department on
March 23, 2015.

     A special motion to dismiss was heard by Dennis J. Curran,
J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Mark S. Furman (Emily C. Shanahan also present) for the
defendants.
     Andrew E. Goloboy (Ronald W. Dunbar, Jr., also present) for
the plaintiff.


_____

     [1] Arthur Leon.

     [2] Justice Botsford participated in the deliberation on this
case prior to her retirement.

LENK, J.   This case involves the application of G. L.
c. 231, § 59H, the "anti-SLAPP" statute, to a dispute between
adjoining building owners.  In 2011, the plaintiff purchased a
parcel of property located at 477 Harrison Avenue in Boston with
the goal of redeveloping it.  The defendants own an abutting
parcel.[3]  Over the course of the next several years, the
defendants opposed the plaintiff's redevelopment plans in
various legal and administrative arenas.  The plaintiff
eventually filed a complaint against the defendants, raising
claims of abuse of process and a violation of G. L. c. 93A,
§ 11.  The defendants responded by filing a special motion to
dismiss pursuant to G. L. c. 231, § 59H. A Superior Court judge
denied the motion, the defendants appealed, and we allowed their
application for direct appellate review.

We consider first whether the defendants have met their
threshold burden under the anti-SLAPP statute of showing that
each claim is solely based on the defendants' petitioning
activity.  See Duracraft Corp. v. Holmes Products Corp., 427
Mass. 156, 167 (1998) (Duracraft).  We conclude that they have
done so as to the abuse of process claim, but not as to the
G. L. c. 93A claim.  The judge correctly denied the special

---

[3] Although Arthur Leon is the sole owner of JACE Boston,
LLC, we refer to him and JACE Boston, LLC, as the "defendants"
throughout the opinion for the sake of convenience.  We denote
Leon separately in instances where the plaintiff alleges that
Leon personally engaged in a course of conduct.

motion to dismiss the latter claim.  The defendants having met their threshold burden as to the abuse of process claim, however, the burden then shifts to the plaintiff to show that the petitioning activity on which that claim is based lacks a reasonable basis in law or fact and has caused it actual injury, i.e., is not a valid exercise of the right to petition.  On the record before the motion judge, who did not reach the issue, it is evident that only a portion of the defendants' petitioning activity that forms the basis for the plaintiff's abuse of process claim was shown to lack such a reasonable basis.  Given this, predating today's decision in Blanchard v. Steward Carney Hospital, Inc., 477 Mass.     ,     (2017) (Blanchard), the plaintiff could proceed on only so much of its abuse of process claim as alleges the invalid exercise of the right to petition, with the remainder dismissed pursuant to the special motion. Notwithstanding this, however, in light of Blanchard, which augments the Duracraft framework, we remand the matter to the Superior Court.  The plaintiff will then have the opportunity to show that the entirety of its abuse of process claim was not primarily brought to chill the defendants' legitimate petitioning activity.  A successful showing in this regard will defeat in full the special motion to dismiss.

1.  Background.  We summarize the relevant facts from the pleadings and affidavits that were before the motion judge.  See

Benoit v. Frederickson, 454 Mass. 148, 149 (2009).  In December
of 2011, the plaintiff purchased a parcel of property located at
477 Harrison Avenue (477 Harrison) containing a five-story brick
building with the intent to redevelop it for residential use.
In preparation for this redevelopment, the plaintiff's building
manager, John Holland, met with Arthur Leon, the sole owner of
JACE Boston, LLC, which owned the building at 1234 Washington
Street (1234 Washington) that shared a wall with the plaintiff's
building.[4]  According to the plaintiff, Leon asked Holland to
delay the redevelopment of 477 Harrison so that the defendants
could redevelop 1234 Washington.  Richard J. Leon attested that
his cousin, the defendant Leon, told him of "his intention to
wait [the plaintiff] out until [the plaintiff] fell into
bankruptcy on the loan and that [he] would then purchase
477 Harrison Avenue from the bank for" a fraction of what the
plaintiff paid to purchase the property.[5]  The plaintiff did not
accede to Leon's purportedly requested delay.

Years of conflict between the parties followed.  The first
front in the ongoing struggle opened with the plaintiff's

_____

[4] The plaintiff alleges that Holland met with Leon after he
learned that Leon had engaged in a protracted effort to obstruct
another abutting developer's redevelopment plans.  The record
contains an abuse of process claim filed against the defendants
by that developer.  It also contains an order denying the
defendants' subsequent special motion to dismiss the developer's
claim.

[5] The defendants deny that Leon made these comments.

request for zoning relief in early 2012. When the plaintiff sought such relief from the zoning board of appeal of Boston (ZBA), Leon's attorney contacted the ZBA on his behalf to oppose it. Despite this, the ZBA unanimously voted to grant the plaintiff's requested variances and conditional use permits. The defendants appealed from the ZBA's decision in August of 2012. During the same time frame, the plaintiff also requested a small project review of its redevelopment proposal from the Boston Redevelopment Authority (BRA). Leon wrote to the BRA to oppose this.

During the summer of 2012, the defendants brought a declaratory judgment action regarding rights to the parties' shared wall. The defendants' claim rested on an indenture and agreement dated June, 1926, which provides that the owner of the "garage building" then under construction at 1234 Washington Street would have the "right and easement" "to tie unto and to use for the support of said garage building the northeasterly wall . . . of the stable" then at 477 Harrison Avenue "to a height not exceeding two stories nor more than thirty four feet above the line of the present curbstone at the westerly corner of Harrison Avenue and Perry Street." In September, 2014, a Superior Court judge ruled that this agreement referenced the parties' respective buildings, and that it precluded the

plaintiff from demolishing the party wall between the two properties below the height specified in the agreement.

With these matters pending and its redevelopment plans thereby stalled, the plaintiff opted for what it hoped would be a faster path forward. In September, 2013, as the parties' summary judgment motions awaited resolution in the Superior Court, the plaintiff abandoned its request for zoning relief, then on appeal, to pursue instead an "as of right project."[6] The plaintiff obtained a short form building permit from the inspectional services department (ISD) in October of 2013, from which the defendants promptly appealed. Armed with the permit, however, the plaintiff notified the defendants that it intended to commence work on the parties' shared wall in late November, 2013. The defendants immediately sought a preliminary injunction to prevent the plaintiff's construction. Rejecting the defendants' application for equitable relief, a Superior Court judge instead entered an order allowing the plaintiff to remove the undisputed portions of the wall. In the meantime, the ISD issued the plaintiff a permit allowing it to trespass on the defendants' property for the purpose of protecting the roof of the defendants' building during the removal of the undisputed portions of the wall.

---

[6] The new proposal, which omitted the lucrative penthouses initially planned for the project, required only a conditional use permit.

And with that, the plaintiff finally began redeveloping its property in January, 2014, two years after it initially had told Leon about its plans. Prior to commencing construction, the plaintiff provided the defendants with copies of the ISD short form permit, the order from the judge permitting removal of the undisputed portions of the wall, project plans, and an insurance certificate. The defendants again sought injunctive relief to prohibit the plaintiff from entering onto their property, and a Superior Court judge again denied the relief sought. The judge also issued an order expressly allowing the plaintiff to enter onto the defendants' property to protect it from damage.

As the construction began, the conflict continued,[7] coming to a climax in December, 2014. At that time, Leon filed a police report reflecting that Holland's employees were standing on the defendants' roof and thereafter brought an application for a criminal complaint alleging that Holland had trespassed illegally on his property.[8] The clerk magistrate at the Boston Municipal Court found insufficient probable cause to support the charge, and dismissed the complaint. In January, 2015, the

---

[7] Apart from the litigation and the administrative disputes, the defendants also filed claims with the plaintiff's insurer in May and December, 2014, against the plaintiff's construction company, asserting damage to the defendants' property.

[8] The criminal complaint indicates that Arthur Leon told police that "[the plaintiff's construction workers] ha[d] left construction equipment on his roof, [including] nails, construction debris, and [that the workers] had used chemicals on the building."

plaintiff again sought to construct penthouses on its property, and requested the requisite zoning relief from the ZBA. The defendants provided a written opposition, but the ZBA granted the plaintiff its requested relief. The defendants once again appealed from this determination to the Superior Court.

Shortly thereafter, and more than three years after the plaintiff first had begun pursuing its redevelopment plans, the plaintiff filed a complaint against the defendants in the Superior Court, claiming abuse of process and a violation of G. L. c. 93A, § 11. With regard to the abuse of process claim, the plaintiff maintained that the defendants "wrongfully used process for ulterior purposes, including" delaying or preventing the development of the plaintiff's property so that the defendants could (1) "bankrupt 477 Harrison Ave., LLC and purchase [it] from the bank at a discount price"; (2) develop their own property at 1234 Washington Street prior to the development of the plaintiff's property; (3) gain leverage over the plaintiff to coerce it into removing any windows providing views over the defendants' property at 1234 Washington Street; and (4) extort the plaintiff into paying off the defendants. The plaintiff also alleged that the defendants' actions constituted "unfair or deceptive acts or practices and/or unfair competition in violation of [G. L. c. 93A] and the Attorney General's regulations promulgated thereunder."

In response to the plaintiff's complaint, the defendants filed a special motion to dismiss pursuant to the anti-SLAPP statute. A Superior Court judge denied the special motion, concluding that the defendants "[could not] meet their burden under [the anti-SLAPP statute] to establish that the plaintiff's suit [was] solely based on their petitioning activity and [had] no other substantial basis [emphasis in original]."

2. Discussion. The defendants maintain that they have met their threshold burden and that the plaintiff has not then shown -- as it must under Duracraft, 427 Mass. at 167, in order to defeat the special motion to dismiss -- that the defendants' petitioning activity lacked a reasonable factual or legal basis. They argue that the judge accordingly erred in denying their special motion to dismiss. The defendants are correct only in part. They have met their threshold burden as to the abuse of process claim but not as to the G. L. c. 93A claim, and the judge correctly denied the motion as to the latter claim. As to the abuse of process claim, the defendants are correct that the plaintiff has not shown that the entirety of the defendants' petitioning activities of which the plaintiff complains lack a reasonable basis in law or fact. However, given our recent decision in Blanchard, augmenting the Duracraft framework, the matter must be remanded to afford the plaintiff an opportunity

to show that its abuse of process claim is nonetheless not a "SLAPP" suit.  See Blanchard, 477 Mass. at    .

a.  Special motion to dismiss.  The anti-SLAPP statute provides a "procedural remedy for early dismissal of" "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" (citation omitted).  Duracraft, 427 Mass. at 161.  That remedy is the special motion to dismiss, which allows a special movant to seek dismissal of "civil claims, counterclaims, or cross claims" based solely on its exercise of the right of petition.  See G. L. c. 231, § 59H.  To prevail on this motion, the burden falls first on the special movant, here the defendants, to "make a threshold showing through pleadings and affidavits that the claims against it 'are "based on" [its] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.'"  See Blanchard, 477 Mass. at    , quoting Fustolo v. Hollander, 455 Mass. 861, 865 (2010).

If the special movant is able to make this showing, the burden shifts to the nonmoving party, here the plaintiff, to defeat the special motion to dismiss.  Following today's decision in Blanchard, the nonmoving party can now meet its second stage burden in two ways.  It may first establish "by a preponderance of the evidence that the [special movant] lacked

any reasonable factual support or any arguable basis in law for its petitioning activity," Baker v. Parsons, 434 Mass. 543, 553-554 (2001), and that the petitioning activity caused the nonmoving party "actual injury" -- i.e., that its petitioning activity is illegitimate.  G. L. c. 231, § 59H.  If the nonmoving party cannot make this showing, it may then attempt to meet its burden under the augmented Duracraft framework as set out in Blanchard by showing that its claim was not "brought primarily to chill," see Blanchard, 477 Mass. at   , quoting Duracraft, 427 Mass. at 161, the special movant's legitimate petitioning activities but rather "to seek damages for the personal harm to [it] from [the] defendants' alleged . . . [legally transgressive] acts."  See Blanchard, supra at   , quoting Sandholm v. Kuecker, 2012 IL 111443 ¶ 57.

b.  Defendants' threshold burden.  In order to meet its threshold burden, the special movant must demonstrate that the nonmoving party's claims are "solely based on" the special movant's petitioning activities (emphasis and quotations omitted).  Duracraft, 427 Mass. at 165.  A special movant's motivation for engaging in petitioning activity does not factor into whether it has met its threshold burden.  See Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002).  Rather, the key inquiry here is whether "the only conduct complained of is . . . petitioning activity."  Fabre v. Walton, 436 Mass. 517, 524

(2002).  In assessing the conduct that is complained of, a judge considers only the allegations that are relevant to the discrete causes of action brought.

i.  The abuse of process claim.  An abuse of process claim involves three elements:  "[1] that process was used, [2] for an ulterior or illegitimate purpose, [3] resulting in damage" (quotations and citation omitted).  Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010).  The tort "has been described as a 'form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money.'" Vittands v. Sudduth, 49 Mass. App. Ct. 401, 406 (2000), quoting Cohen v. Hurley, 20 Mass. App. Ct. 439, 442 (1985).  Given that the invocation of process necessarily constitutes petitioning activity for the purposes of the anti-SLAPP statute, see G. L. c. 231, § 59H (petitioning activity includes "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding"), an actionable abuse of process claim will always be, at least in part, based on a special movant's petitioning activities.

As we noted in Fabre, however, this does not mean that an abuse of process claim will always be solely based on a special movant's petitioning activities.  See Fabre, 436 Mass.

at 524 n.10.  Although a party's invocation of process alone may give rise to a colorable abuse of process claim in certain circumstances, see, e.g., Carroll v. Gillespie, 14 Mass. App. Ct. 12, 26 (1982) (upholding abuse of process claim where automobile repair shop owner filed criminal complaint against customer to pressure her to pay repair bill), a cognizable claim can also involve a subsequent misuse of such process by the offending party that is not itself petitioning activity.  See Kelley v. Stop & Shop Cos., 26 Mass. App. Ct. 557, 558 (1988) ("subsequent misuse of the process . . . constitutes the misconduct for which liability is imposed" [citation omitted]).  See also Adams v. Whitman, 62 Mass. App. Ct. 850, 855-856 (2005), and cases cited (discussing these two types of abuse of process claims).  For example, a party's attempt to use an invocation of process to extort an opposing party constitutes a substantial nonpetitioning basis for an abuse of process claim. See, e.g., Keystone Freight Corp. v. Bartlett Consol., Inc., 77 Mass. App. Ct. 304, 315-316 (2010).  Subsequent misuse of process, as long it as it is not also petitioning activity, may thus provide a nonpetitioning basis for a nonmoving party's abuse of process claim.  The question here then is whether the plaintiff alleges that the defendants engaged in any conduct germane to its abuse of process claim, apart from their

invocations of process, which can provide a "substantial basis" for its claim.

The plaintiff avers that its abuse of process claim rests on two grounds other than the defendants' invocations of process:  (1) the two insurance claims filed by the defendants against the plaintiff's construction company; and (2) Leon's alleged statements indicating an ulterior motive behind the defendants' use of process.  Neither of these, however, constitutes substantial nonpetitioning bases for the plaintiff's abuse of process claim.

The defendants' allegedly false insurance claims fail to provide a substantial nonpetitioning basis for the plaintiff's abuse of process claim because they do not bear any apparent relation to it.  Filing an insurance claim does not constitute process in and of itself, see Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 390 (1975) (process defined as "the papers issued by a court to bring a party or property within its jurisdiction"), and the defendants do not suggest any connection between the insurance claims and the defendants' use of process. As such, the insurance claims do not support the plaintiff's claim of abuse of process.

Although Leon's statements have obvious relevance to the second element of the tort (use of process for an ulterior or illegitimate purpose), the inquiry here is not as to the

sufficiency of the complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The inquiry instead is whether, in connection with the statutory special motion to dismiss, the defendants have satisfied their threshold burden, an inquiry that focuses on the actual conduct complained of, and not the defendants' motivations for engaging in it. See Fabre, 436 Mass. at 523-524 (special movant's purported statements suggesting ulterior motivation behind petitioning activity did not provide "substantial basis other than or in addition to the petitioning activities implicated" [emphasis in original; citation omitted]). See also North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 863 (2009) ("the fact that . . . speech involves a commercial motive does not mean it is not petitioning"); Office One, Inc., 437 Mass. at 122 (focus in initial stage of anti-SLAPP inquiry is "on the conduct complained of, and, if the only conduct complained of is petitioning activity, then there can be no other 'substantial basis' for the claim" regardless of the "motive behind [the] petitioning activity" [emphasis and citation omitted]). Otherwise put, the focus at the threshold burden stage is on whether the conduct complained of consists only of the defendants' petitioning activity; here, the only conduct complained of is the process the defendants used. Although the statements at issue may explain the motivation behind the

defendants' use of process, they are not themselves the conduct on which the plaintiff rests its abuse of process claim and, accordingly, cannot provide a substantial nonpetitioning basis for that claim.[9]  The defendants have met their threshold burden as to the plaintiff's abuse of process claim.[10]

ii.  Chapter 93A claim.  The plaintiff's G. L. c. 93A claim is based on the same factual allegations as the plaintiff's abuse of process claim.  The predicate for a G. L. c. 93A claim differs in material respects, however, from that of an abuse of process claim, and rests here in part on acts that are not petitioning activities.  Because the plaintiff's allegation that the defendants filed two false insurance claims against the plaintiff's construction company provides a substantial nonpetitioning basis for its G. L. c. 93A claim, the defendants

---

[9] The outcome might well be different if Leon's statements themselves constituted the underlying conduct upon which the plaintiff's claim rested.  For example, an allegation that Leon had stated to the plaintiff that he would continue invoking process unless the plaintiff paid him a certain amount of money -- i.e., made a statement in an attempt to extort the plaintiff through his use of process -- could provide a substantial nonpetitioning basis for the plaintiff's claim.

[10] The plaintiff's contention that its claims are not based on, but are rather "in response to," the defendants' petitioning activity is also unavailing.  This argument rests on language in a footnote in Duracraft, 427 Mass. at 168 n.20, stating that, in the context of the anti-SLAPP statute, "based on" does not mean "in response to."  The remaining language of the note, however, makes clear that the clause that the plaintiff cites stands only for the proposition that counterclaims are not automatically "based on" a special movant's petitioning activity.  See id.

cannot show that the claim is solely based on their petitioning activity.

While less than ideally pleaded, the plaintiffs' complaint unmistakably alleges that the defendants' filing of false insurance claims against the plaintiff's construction company formed part of the unfair or deceptive practices that the defendants engaged in to halt the plaintiff's redevelopment projects and thereby harm the plaintiff financially.[11]  See Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 820 (2014) (plaintiff bringing claim under G. L. c. 93A, § 11, must demonstrate "(1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act of practice, as defined by G. L. c. 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or

---

[11] The defendants maintain that the insurance claims do not support the plaintiff's G. L. c. 93A claim because they were submitted to the plaintiff's construction company's insurance carrier rather than the plaintiff's insurance carrier.  A special motion to dismiss under the anti-SLAPP statute, unlike a motion to dismiss brought under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), does not test the sufficiency of the complaint.  Instead a "special movant must take the adverse complaint as it finds it," see Blanchard, 477 Mass. at    , in order to determine whether it concerns only the defendants' petitioning activities.  Thus, the only relevant inquiry is whether the complained of conduct relevant to the plaintiff's discrete cause of action provides a substantial nonpetitioning basis for the plaintiff's claim.

practice" [footnote omitted]); Commonwealth v. Decotis, 366 Mass. 234, 241, 242 (1974) (G. L. c. 93A, § 2, does not provide definition for "unfair practice," and "[t]he existence of unfair acts and practices must be determined from the circumstances of each case"). See also Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 27, cert. denied, 522 U.S. 1015 (1997) ("[A] practice is unfair if it is 'within . . . the penumbra of some common-law, statutory, or other established concept of unfairness; [i.e.,] is immoral, unethical, oppressive, or unscrupulous . . .'" [citation omitted]). The allegedly false insurance claims asserted as part of the G. L. c. 93A claim are acts distinct from the related but separate assertedly unfair or deceptive acts concerning the defendants' use of process. Unlike the use of process, however, the filing of false insurance claims does not constitute petitioning. Accordingly, the defendants have failed to meet their threshold burden with respect to the plaintiff's G. L. c. 93A claim, and the trial judge's denial of the special motion to dismiss is affirmed with respect to that count.

c. The plaintiff's second-stage burden. Because the defendants have met their threshold burden with respect to the plaintiff's abuse of process claim, the plaintiff may defeat the special motion to dismiss this claim by demonstrating, "by a preponderance of the evidence," that the defendants' petitioning

activity upon which its abuse of process claim is based is illegitimate -- i.e., that it "lacked any reasonable factual support or any arguable basis in law," Baker, 434 Mass. at 553-555, and caused it "actual injury," G. L. c. 231, § 59H.  If it cannot make this showing, the plaintiff may now also prevail by establishing to the judge's fair assurance that its abuse of process claim is not a "SLAPP" suit under the augmented Duracraft framework -- i.e., "that its primary motivating goal in bringing its claim, viewed in its entirety, was 'not to interfere with and burden defendants' . . . petition rights, but to seek damages for the personal harm to [it] from [the] defendants' alleged . . . [legally transgressive] acts.'" Blanchard, 477 Mass. at    , quoting Sandholm, 2012 IL 111443 at ¶ 57.

     i.  Legitimacy of the defendants' petitioning activities. The plaintiff's abuse of process claim rests on numerous instances where the defendants employed process and thereby engaged in petitioning activity.  To defeat the special motion to dismiss, the plaintiff must show that each such instance lacked a reasonable basis in law or fact.  Save for Leon's application for a criminal complaint against Holland, the plaintiff has not carried its burden.

     We note two relevant considerations in determining whether this little-discussed second-stage burden has been met.  First,

a plaintiff cannot meet its burden merely by presenting affidavits contradicting the factual basis of the special movant's petitioning activities, see Benoit, 454 Mass. at 154 n.7, or demonstrating that the petitioning activities were unsuccessful. "The critical determination is not whether the petitioning activity in question will be successful . . . "; it is instead whether the petitioning activity "contains any reasonable factual or legal merit at all." Wenger v. Aceto, 451 Mass. 1, 7 (2008). Second, the defendants' motivation for engaging in petitioning activity does not factor into whether their petitioning activity is illegitimate.[12] See id. at 8 (nonmoving party's contention that special movant filed criminal complaint with ulterior motive irrelevant because criminal complaint had reasonable basis in law). Rather, the relevant inquiry is whether the plaintiff has demonstrated that the defendants' petitioning activity lacks an objectively reasonable basis. See G. L. c. 231, § 59H (inquiry concerns whether petitioning activity was "devoid of any reasonable factual support or any arguable basis in law").

---

[12] By contrast, the motivation behind the defendants' petitioning activities could well be relevant to the inquiry under the augmented Duracraft framework, discussed infra, as to whether the plaintiff's abuse of process claim is in fact a "SLAPP" suit.

Our review of the record suggests that the defendants engaged in six separate instances of petitioning activities:[13] (1) the submission of written and oral statements to the BRA and the ZBA; (2) the filing of the zoning appeals in the Superior Court in 2012 and 2015; (3) the filing of the declaratory judgment action with respect to the indenture and agreement; (4) the filing of the police report; (5) the application for a criminal complaint against Holland; and (6) the communications with ISD and various permits granted by ISD.  Although the plaintiff assails the motivation behind all of these activities, it only challenges the factual and legal basis for two invocations of process -- Leon's police report and application for a criminal complaint against Holland for trespassing.

---

[13] The anti-SLAPP statute defines petitioning activities broadly to include:

> "[1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government."

G. L. c. 231, § 59H.

The plaintiff's argument that Leon's police report lacked a reasonable basis in fact or law is unavailing. The police report recounts Leon's observation that the plaintiff's workers were standing on his roof -- which the record suggests they were, albeit on planking supported by rubber tires -- and that they remained there despite his warnings to the plaintiff that they were trespassing. Given that the record supports this account of the events, the police report does not itself lack a reasonable basis in fact or law.

The plaintiff is on firmer ground in his argument concerning Leon's application for a criminal complaint. The application was purportedly filed in response to the presence of the plaintiff's construction workers, along with various materials and chemicals, on the roof of 1234 Washington Street. The application for a criminal complaint was dismissed for lack of probable cause. Although this in and of itself is not fatal to the defendants' petitioning activity, see Benoit, 454 Mass. at 153-154, Leon's application for a criminal complaint came after a Superior Court judge explicitly granted the plaintiff the affirmative right to trespass on the defendants' property to protect it from damage. The combination of the lack of probable cause finding and the Superior Court order supplies the requisite preponderance of the evidence in favor of the

conclusion that the criminal complaint lacked any reasonable basis in fact or law.

The plaintiff also has demonstrated that the defendants' application for a criminal complaint caused it actual injury. Holland stated in an affidavit that he suffered "embarrassment" from the criminal complaint, that he had to attend a probable cause hearing, and that he feared for the financial health of the plaintiff if the complaint had spawned criminal charges. This is enough to constitute "actual injury" for the purposes of the anti-SLAPP statute.  See Millennium Equity Holdings, LLC, 456 Mass. at 645 (emotional, reputational, and fiscal harms of malicious prosecution constituted legitimate categories of harm to plaintiff).

This then presents the novel issue as to whether all or only some of a special movant's petitioning activities must be shown to be illegitimate in order to defeat a special motion to dismiss.  The text of the anti-SLAPP statute is silent on the point, and we look to the intent of the Legislature for insight. See Hanlon v. Rollins, 286 Mass. 444, 447 (1934).  The legislative purpose of the anti-SLAPP statute is to provide for the expeditious dismissal of suits targeting the "valid exercise of the constitutional right[] of . . . petition for the redress of grievances."  See Duracraft, 427 Mass. at 161, quoting 1994 House Doc. No. 1520.

Applying this legislative purpose to the case at hand, the petitioning activity that has been shown to lack a reasonable basis in law or fact is not the "valid petitioning" that the statute protects. The situation is different as to the remaining petitioning activity, which the plaintiff has failed to show is illegitimate and is therefore presumptively protected. We therefore determine that the defendants' legitimate petitioning activity is protected by the statute. Were we to conclude otherwise, a nonmoving party effectively could elude the protections of the anti-SLAPP statute if it could prove that one small portion of a special movant's petitioning activity was illegitimate. What this means is that, unless the plaintiff can, on remand, show that the entirety of its abuse of process claim is not a "SLAPP" suit under the augmented Duracraft framework, see Blanchard, 477 Mass. at   - ,[14] it may proceed only on so much of its abuse of process claim as alleges illegitimate process, i.e., Leon's application for a

_____

[14] That the plaintiff only in part met its second-stage burden of showing that the defendants' petitioning activities were illegitimate is, however, irrelevant to its burden on remand under the augmented Duracraft framework as set out in Blanchard. To meet its new burden on remand, the plaintiff must show that its primary motivating goal in filing its abuse of process claim, in its entirety, was not to chill the defendants' legitimate petitioning activity. See Blanchard, 477 Mass. at   . Moreover, if the plaintiff can make the requisite showing, then the defendants' motion to dismiss is defeated in full. Id.

criminal complaint. In that event, the special motion to dismiss such portion of the abuse of process claim arising out of the defendants' protected petitioning activities shall be allowed and an appropriate award of attorney's fees and costs made.[15]

ii. Remand. In light of our decision in Blanchard, we remand this case to the Superior Court to allow the plaintiff to show that its abuse of process claim is not a "SLAPP" suit under the augmented Duracraft framework. See Blanchard, 477 Mass. at

---

[15] The plaintiff suggests that the "preponderance of the evidence" standard laid out in Baker, 434 Mass. at 553-555, violates its right to a jury trial under art. 15 of the Massachusetts Declaration of Rights ("in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury"). We discern no merit in the plaintiff's argument. "The right to a jury trial does not grant to a party the right to put to a jury any question he or she wishes." English v. New England Med. Ctr., Inc., 405 Mass. 423, 426 (1989), cert. denied, 493 U.S. 1056 (1990). The right attaches only to questions of fact material to the merits of a party's claim. See id. A special motion to dismiss, however, presents a question of law separate from the merits of the plaintiff's claim -- the question whether the defendant's complained-of petitioning activity falls within the protective ambit of the anti-SLAPP statute. See Benoit, 454 Mass. at 158 n.3 (Cordy, J., concurring) ("A finding by the judge that the plaintiff has met his burden and the case can go forward is . . . not a judgment on the merits of the claim, but rather an evaluation whether the defendant's prior petitioning activity falls within the protection of the anti-SLAPP statute"). As with the similar doctrine of qualified immunity for government officials, the special motion inquiry is "separate from the merits of the underlying action . . . even though a reviewing court must consider the [nonmoving party's] factual allegations in resolving the . . . issue." See Mitchell v. Forsyth, 472 U.S. 511, 528-529 (1985).

-     .  "It may do so by demonstrating that [its abuse of process claim] was not primarily brought to chill the special movant's legitimate petitioning activities," i.e., by establishing, "such that the motion judge may conclude with fair assurance, that its primary motivating goal in bringing its [abuse of process claim], viewed in its entirety, was 'not to interfere with and burden defendants' . . . petition rights, but to seek damages for the personal harm to [it] from [the] defendants' alleged . . . [legally transgressive] acts.'"  Id. at     , quoting Sandholm, 2012 IL 111443 at ¶ 57.

3.  Conclusion.  The denial of the defendants' special motion to dismiss is affirmed with respect to the plaintiff's claim under G. L. c. 93A, § 11, and vacated with respect to its abuse of process claim.  Given that the plaintiff has not demonstrated that the entirety of the defendants' petitioning activities lacks a reasonable basis in fact or law, it may attempt to make the showing outlined in Blanchard, 477 Mass. at -    , upon remand.  The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.