

**Filed**

Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## RICHARD E. MOYLAN,
Plaintiff/Counterclaim Defendant-Appellant,

**v.**

## AXE MURDERER TOURS GUAM, INC.; PASEO VIEW PROPERTIES, INC.; E.C. DEVELOPMENT, LLP; JOHN DOE COMPANIES 1-5; and JOHN DOES A-M,
Defendants/Counterclaimants/Third-Party Plaintiffs-Appellees,

**v.**

## DOUGLAS MOYLAN,
Third-Party Defendant-Appellant.

Supreme Court Case No.: CVA20-021
Superior Court Case No.: CV0760-16

## OPINION

## Cite as: 2021 Guam 25

Appeal from the Superior Court of Guam
Argued and submitted on August 25, 2021
Via Zoom video conference

**E-Received**
12/22/2021 4:34:56 PM

Appearing for Plaintiff/Counterclaim
Defendant-Appellant:
Douglas B. Moylan, *Esq.*
Law Offices of Douglas B. Moylan
138 W. Seaton Blvd., Ste. 201
Hagåtña, GU 96910


Appearing for Third-Party
Defendant-Appellant:
Curtis C. Van de veld, *Esq.*
The Vandeveld Law Offices, P.C.
123 Hernan Cortes Ave.
Hagåtña, GU 96910

Appearing for Defendant/Counterclaimant/
Third-Party Plaintiff-Appellee
Axe Murderer Tours Guam, Inc.:
Jeffrey A. Cook, *Esq.*
Cunliffe & Cook
A Professional Corporation
210 Archbishop Flores St., Ste. 200
Hagåtña, GU 96910

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, C.J.:**

**[1]**     Appellants Richard E. Moylan and Douglas Moylan (collectively, "the Moylans") appeal from denial of their motion for summary judgment under Guam's Citizen Participation in Government Act of 1998 ("CPGA"), 7 GCA § 17101 *et seq.* (2005).  The trial court initially granted the Moylans' motion but reconsidered and reversed after this court issued *Cho v. Alupang Beach Club, Inc.*, 2020 Guam 10.  Applying *Cho*, the trial court determined the Moylans did not meet their CPGA prima facie burden because they did not show the claims against them had "no substantial basis other than or in addition to . . . petitioning activities." *Cho*, 2020 Guam 10 ¶ 8 (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 943 (Mass. 1998)).  On appeal, the Moylans ask the court to carve out an exception to this rule.  We decline to deviate from *Cho* and thus affirm the trial court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**[2]**     The case arises from a dispute over real property in Hagåtña.  Richard is a tenant in common over Lot No. 1051, Hagåtña, as are some of his relatives.  Some of Richard's relatives leased out their interests in Lot No. 1051; those interests have since been assigned to Paseo View Properties, Inc.  Paseo View Properties is affiliated with E.C. Development, LLP, and these companies share common management.  Appellee Axe Murderer Tours Guam, Inc. ("AMT"), operates a marine diving business on several lots adjacent to Lot No. 1051, which they lease from Paseo View Properties and/or E.C. Development.

**[3]**     In 2016, Richard—through his attorney, Douglas—sued AMT and Paseo View Properties, alleging the companies used Lot No. 1051 without Richard's permission.  After the

discovery process started, Douglas allegedly made reports to five Government of Guam agencies, suggesting AMT may have violated local laws. Thereafter, Genevieve Rapadas, then-attorney for AMT, wrote a letter to Douglas about discovery issues. Rapadas wrote:

> Finally, based on information from our client, it appears that you may be using the discovery process to obtain documents to harass our client. We were informed that today both the Guam Fire Department and the Guam Environmental Protection Agency visited AMT based on "complaints" made regarding what we were told were purported illegal operations and false business licenses. If these complaints were made by you and you are providing our documents to these agencies so that our clients may be "investigated" for wrongdoing that you are trying to manufacture, this is an obvious abuse of the discovery process. We hope that this is not the case.

*See* RA, tab 45 (Decl. Gary W.F. Gumataotao, Aug. 2, 2017), Ex. G at 2 (Letter Rapadas to Moylan, Feb. 3, 2017). Rapadas later sent another letter to Douglas, this time accusing him of taking photographs of AMT's premises, employees, and customers in a harassing manner. *See* RA, tab 45, Ex. H at 1 (Letter Rapadas to Moylan, Feb. 13, 2017). Rapadas demanded that Douglas refrain from any further "investigatory activities or self-help actions" and claimed Douglas's actions "have resulted in interruption of business operations and intimidation of its employees and customers." *Id.* at 2.

[4]    In July 2017, AMT filed a counterclaim and a third-party complaint against Richard and Douglas, respectively. AMT asserted several claims against both Richard and Douglas, two of which are at issue in this appeal: Harassment and Tortious Interference with Business Relations ("TIBR"). AMT's counterclaim against Richard for Harassment makes these factual allegations:

> **38.**    Several times in 2015 and 2016, Richard E. Moylan through his agent Douglas Moylan committed harassment by approaching Counterclaimant Axe Murderer's employees and customers, taking pictures of them, occasionally within inches of their faces, their vehicles and their license plates. His conduct continued even after the filing of the underlying lawsuit on August 31, 2016.
>
> **39.**    On or about October 26, 2015, while Richard E. Moylan with his agent Douglas Moylan was on Lot 1051, one of Counterclaimant Axe Murderer's

employees approached Douglas Moylan to inquire his purpose for being on the property. In response to the employee's inquiry, Douglas Moylan raised his hand to motion for the employee to leave and in doing so, struck the employee. Following this incident, Counterclaimant Axe Murderer filed a report with the Guam Police Department naming both Douglas Moylan and Richard E. Moylan.

     **40.**      Upon information and belief within two days of Axe Murderer's submission of business licenses unrelated to Lot No. 1051, Axe Murderer was inspected by both the Guam Fire Department and the Guam Environmental Protection Agency for reported illegal business activity by Richard E. Moylan through his agent Douglas Moylan.

RA, tab 35 at 25-26 (AMT's Answer, July 13, 2017). AMT's third-party claim against Douglas for Harassment makes essentially the same factual allegations, and AMT's claims against Richard and Douglas for TIBR also essentially repeat these same allegations.

[5]      The Moylans moved for summary judgment on these claims under the CPGA, which protects litigants against "strategic lawsuits against public participation," or "SLAPPs." *See* 7 GCA 17102(a)(4)-(8), (b)(4). Initially, the trial court ruled for the Moylans. In its first Decision and Order on the issue, the trial court held: "AMT's Harassment and TIBR claims directly allege that the Moylans engaged in petitioning the government," thereby triggering CPGA protections. RA, tab 111 at 8 (Dec. & Order, Dec. 13, 2018). The trial court therefore granted summary judgment for the Moylans. AMT then moved for reconsideration, which was denied.

[6]      Several months later, this court issued *Cho*, 2020 Guam 10, where we held that a CPGA movant satisfies their prima facie burden only by showing the claim against them has "no substantial basis other than or in addition to the petitioning activities." 2020 Guam 10 ¶ 8 (quoting *Duracraft*, 691 N.E.2d at 943). Following *Cho*, AMT renewed its motion for reconsideration, arguing *Cho* amounted to an intervening change in controlling law. The trial court agreed. The court held that while the Harassment and TIBR claims did allege petitioning activity (Douglas's reporting to government agencies), the claims also alleged a substantial basis

for liability other than petitioning activity (Douglas striking an AMT employee).  The trial court concluded the Moylans had not met their CPGA prima facie burden under *Cho*, and it therefore reinstated the Harassment and TIBR claims.  Richard timely appealed.

## II.  JURISDICTION

**[7]**     "This court has jurisdiction to hear an expedited appeal of a trial court order denying a motion for summary judgment in cases involving an anti-strategic lawsuit against public participation as outlined in 7 GCA § 17105."  *Cho*, 2020 Guam 10 ¶ 4 (quoting *Melwani v. Hemlani*, 2015 Guam 17 ¶ 15); *see also* 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-57 (2021)); 7 GCA § 3107 (2005).

## III.  STANDARD OF REVIEW

**[8]**     "Any motion seeking immunity under the CPGA is treated as a motion for summary judgment."  *Joe & Flo's, Inc. v. Gutierrez*, 2020 Guam 21 ¶ 8 (quoting *Enriquez v. Smith*, 2015 Guam 29 ¶ 9).  "[T]his court reviews *de novo* a trial court's denial of a motion for summary judgment and issues of statutory interpretation involving the CPGA."  *Cho*, 2020 Guam 10 ¶ 5.

## IV.  ANALYSIS

**[9]**     The Moylans raise one issue on appeal, which we understand as follows: whether the court should create an exception to *Cho*'s "no substantial basis" test when a single cause of action pleads both petitioning activity and non-petitioning activity.[1]  The Moylans suggest a new

---

[1] The question initially presented to the court, as framed by the Moylans, was:

Does the Citizen Participation in Government Act's use of "*solely based upon petitioning activity*" language create an exception for mixed protected petitioning activity and unprotected activity cases, thereby allowing Counterclaim Plaintiff to artfully draft a lawsuit to circumvent Guam's CPGA and thus to punish the *legitimate* reporting to law enforcement officials of potentially dangerous activities and lawlessness, Free Speech, and the Right to Petition?

Appellants' Br. at 2 (Feb. 22, 2021).  Because this framing is unwieldy, the court has exercised its discretion to rephrase the question presented in order to focus the question posed.  *Cf. Stamford Hosp. v. Vega*, 674 A.2d 821, 827-28 (Conn. 1996).

rule, which they call the "separate counts test," should govern in this circumstance. *See* Appellant's Br. at 13 (Feb. 22, 2021). As we explain below, the facts do not persuade us to adopt the "separate counts test" or to otherwise deviate from *Cho*.

[10] We begin by situating *Cho* within its proper context. The Guam Legislature enacted the CPGA to protect citizen participation in government from SLAPPs. *Joe & Flo's*, 2020 Guam 21 ¶ 9 (quoting 7 GCA § 17102(b)(1)). SLAPPs are lawsuits which "discourage 'citizens, businesses and organizations based on their valid exercise of their right to petition.'" *Cho*, 2020 Guam 10 ¶ 6 (quoting 7 GCA § 17102(a)(3)). SLAPPs "are used to censor, chill, intimidate, or punish citizens, businesses and organizations for involving themselves in public affairs"; thus, they are "an abuse of the judicial process." 7 GCA § 17102(a)(6). The CPGA provides a pathway to dispose of these "'groundless'—i.e., meritless, retaliatory" lawsuits. *Cho*, 2020 Guam 10 ¶ 12 (quoting 7 GCA § 17102(a)(7)).

[11] The CPGA applies "to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to or is in response to any act of the moving party in furtherance of the moving party's rights as described in [7 GCA] § 17104." 7 GCA § 17105. These rights include "seeking relief, influencing action, informing, communicating and otherwise participating in the processes of government." *Id.* § 17104. When the CPGA is properly invoked, the movant's petitioning activities are "immune from liability, regardless of intent or purpose, except where not aimed at procuring any government or electoral action, result or outcome." *Id.* A successful CPGA movant is also entitled, "without regards to any limit under Guam law," to litigation costs, attorneys' fees, and sanctions upon either the opposing party or the opposing party's attorneys. *Id.* § 17106(g).

[12]    The CPGA offers powerful remedies to deter filing SLAPPs and to protect litigants forced to defend against SLAPPs. But because the CPGA's remedies are powerful, we construe the applicability of the CPGA narrowly. As other courts have noted, when an anti-SLAPP statute is construed too broadly in favor of the defendant's right to petition the government, the statute may compromise the plaintiff's own right to petition the government. *See, e.g.*, *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 48; *Blanchard v. Steward Carney Hosp., Inc.*, 75 N.E.3d 21, 36 (Mass. 2017). Such a construction would violate a critical purpose of the CPGA: to promote an "equitable balance between the rights of persons to file lawsuits and to trial by jury, and the rights of other persons to petition, speak out, associate and otherwise participate in their governments." 7 GCA § 17102(b)(2)).

[13]    We decided *Cho* given the CPGA's twin ambitions: to protect defendants against SLAPPs and to protect the rights of plaintiffs to seek redress for genuine injuries. To balance these competing interests, we construed the CPGA as applicable only in the context of "groundless" claims—in other words, SLAPPs. *See Cho*, 2020 Guam 10 ¶ 12. In *Cho*, we held that for a CPGA movant to make their prima facie case, "the movant must show that the petitioning or protected activity '*itself* is the wrong complained of.'" *Id.* ¶ 8 (quoting *Mission Beverage Co. v. Pabst Brewing Co.*, 223 Cal. Rptr. 3d 547, 557 (Ct. App. 2017)). And to show the petitioning activity "itself" is the wrong complained of, the movant must show that the pleadings and affidavits supporting the non-movant's claim have "no substantial basis other than or in addition to the petitioning activities."[2] *Id.* (quoting *Duracraft*, 691 N.E.2d at 943). Thus, where the pleadings contain a substantial basis for liability other than the movant's petitioning activities, the CPGA does not apply to that claim. *See id.* ¶ 12.

---

[2] For brevity, this opinion will refer to *Cho*'s "no substantial basis other than or in addition to the petitioning activities" holding as the "*Duracraft* test."

[14]     We adopted the *Duracraft* test to help courts distinguish between groundless claims filed to punish a defendant for their petitioning activity, rather than claims which have independent legal merit beyond the allegations of petitioning activity. When a claim pleads no substantial basis for liability other than petitioning activity, the claim is groundless under the CPGA—it is a SLAPP. The CPGA applies to these claims, and the full panoply of CPGA protections is available to the defendant. But where a claim does plead a substantial basis for liability other than or in addition to petitioning activity, then the claim cannot be called "groundless." In this circumstance, the non-petitioning activity may have genuine merit irrespective of the petitioning activity. This claim is not a SLAPP, and so the CPGA does not apply. The *Duracraft* test therefore allows the CPGA to vindicate the rights of defendants against SLAPPs—but, critically, only against SLAPPs.

[15]     Applying the *Duracraft* test to the facts here, we agree with the trial court: the Moylans did not meet their CPGA prima facie burden. We do not dispute the premise that AMT's claims allege Douglas reported to government agencies, nor do we dispute the premise that reporting to government agencies is a petitioning activity under the CPGA. *See* 7 GCA § 17104; *Enriquez*, 2015 Guam 29 ¶ 16 (communications "made directly to government officials in their capacity as a government body . . . forms the very core of protected petitioning activity under [the CPGA]"). Had AMT pleaded no substantial basis for liability other than its allegation that Douglas made these reports, the claims would fall within the reach of the CPGA. However, AMT's pleadings also allege Douglas struck an AMT employee and took photographs of AMT's premises, employees, and customers in a harassing manner. Physical violence and harassment are not "petitioning activity" protected by the CPGA. *See Lam v. Ngo*, 111 Cal. Rptr. 2d 582, 597 (Ct. App. 2001). Under *Cho* and *Duracraft*, the allegation of physical violence is a substantial basis

other than or in addition to the allegation of reporting to government agencies. Thus, the Moylans' prima facie burden is not satisfied; the CPGA does not apply to these claims.

[16]     The Moylans believe *Cho* does not control this case for two reasons: first, because *Cho* differs on its facts, and second, because recent developments in Massachusetts's anti-SLAPP law call *Duracraft* into question. We dispatch first with the Moylans' factual distinction argument. The Moylans argue this case is not similar to *Cho* because here, AMT filed their claims to retaliate against the Moylans for engaging in petitioning activity. *See* Appellants' Br. at 34-35. At the outset, we decline to make a factual finding as to AMT's motivations; this is a question of fact to be resolved, if necessary, by the trial court. But even assuming AMT filed its claims to retaliate against the Moylans, a retaliatory animus does not bear on whether a claim falls within CPGA protection. *See Joe & Flo's*, 2020 Guam 21 ¶ 15; *see also Ayasli v. Armstrong*, 780 N.E.2d 926, 933 (Mass. App. Ct. 2002). Instead, as we have explained, a claim falls within the reach of the CPGA only if it is a SLAPP—and that inquiry turns on application of the *Duracraft* test, not an analysis of motive. Even if it were proven that AMT filed its claims to retaliate, a retaliatory animus does not create CPGA applicability where it would not otherwise exist. Thus, we find the alleged factual distinction between this case and *Cho* irrelevant to our analysis.

[17]     The Moylans' legal argument is more compelling. Noting we adopted the *Duracraft* test from Massachusetts, the Moylans cite recent Massachusetts Supreme Judicial Court decisions which, in the Moylans' view, depart from *Duracraft*. The Moylans argue from two companion cases, *Blanchard v. Steward Carney Hospital, Inc.*, 75 N.E.3d 21 (Mass. 2017), and *477 Harrison Ave., LLC* v. *JACE Boston, LLC*, 74 N.E.3d 1237 (Mass. 2017). The Moylans read these cases to hold that where a single cause of action "mixes" both petitioning and non-petitioning activity, a new evaluative framework called the "separate counts test" supersedes the

*Duracraft* test. *See* Appellants' Br. at 24-31. The Moylans also cite a California case, *Baral v. Schnitt*, 376 P.3d 604 (Cal. 2016), for the proposition that an anti-SLAPP movant may strike the allegations of petitioning activity without disturbing the allegations of non-petitioning activity. We find these rules intriguing but unpersuasive; they do not apply to the facts presented here.

[18]    The "separate counts test" proposed by the Moylans finds support in *Blanchard*, 75 N.E.3d 21. In *Blanchard*, a group of recently fired nurses sued their former employer, a hospital. *Id.* at 25. The nurses brought a single cause of action for defamation against the hospital, alleging within the single cause of action two separate instances of defamation: first, the hospital defamed the nurses by reporting the firing to a local newspaper ("newspaper allegation"), and second, the hospital defamed the nurses by reporting the firing to the nurses' former coworkers ("coworker allegation"). *See id.* at 28. The *Blanchard* court held, under Massachusetts's anti-SLAPP statute, the newspaper allegation was protected petitioning activity, but the coworker allegation was non-petitioning activity. *Id.* at 31-33.

[19]    The *Blanchard* court recognized a potential inequity which could arise from applying *Duracraft* to those facts. The nurses could have pleaded their two claims for defamation as two independent causes of action: one based on the newspaper allegation, and one based on the coworker allegation. Each cause of action would have been legally sufficient to proceed. But had the nurses pleaded in this way, the cause of action based on the newspaper allegation would be dismissible as a SLAPP—it would allege no substantial basis other than petitioning activity. Instead, because the nurses combined their two defamation claims within a single cause of action, *Duracraft* foreclosed the hospital's anti-SLAPP motion—the coworker allegation, a non-petitioning activity, served as a substantial basis for defamation other than or in addition to the newspaper allegation. Strictly applying *Duracraft* could allow clever plaintiffs to intentionally

"combin[e] into a single count claims that are based on both petitioning and non-petitioning activities" to preemptively defeat an otherwise-viable anti-SLAPP motion. *Id.* at 35. To remedy this potential problem, the *Blanchard* court held: "Where, as here, the claim structured as a single count readily could have been pleaded as separate counts, a special movant can meet its threshold burden with respect to the portion of that count based on petitioning activity." *Id.*

[20]     But while *Blanchard* departs from *Duracraft*, subsequent Massachusetts decisions show *Blanchard* applies only in narrow circumstances. In *JACE Boston*, decided the same day as *Blanchard*, the plaintiff asserted a claim under Massachusetts's unfair trade practices statute arising both from petitioning activity and non-petitioning activity. *See JACE Boston*, 74 N.E.3d at 1240-41. The defendant filed an anti-SLAPP motion; the trial court denied the motion, and the Massachusetts Supreme Judicial Court affirmed. *Id.* at 1240, 1246-47. The *JACE Boston* court did not apply *Blanchard*, but *Duracraft*: the court held that the allegations of non-petitioning activity were a substantial basis apart from the allegations of petitioning activity, and so the defendants could not show "the claim is solely based on their petitioning activity." *Id.* at 1246. In *Reichenbach v. Haydock*, 90 N.E.3d 791 (Mass. App. Ct. 2017), the Massachusetts Court of Appeals analyzed the divergence between *Blanchard* and *JACE Boston*. The *Reichenbach* court reconciled the two opinions:

> Read together, these cases illustrate that where the individual underlying acts can each independently support the asserted cause of action, then they are to be analyzed separately for purposes of the first prong of the *Duracraft* test. This analysis should be undertaken with an eye toward the particular cause of action: where a course of conduct is the basis of the claim, such as is typical of [unfair trade practice] claims, as in [*Jace Boston*], then the acts should not be parsed one from the other; where the individual acts can stand alone to support the cause of action (as in the individual statements underlying the defamation claim in *Blanchard*), they should be examined one by one. The analysis depends on the nature of the cause of action alleged and the theory of the complaint.

90 N.E.3d at 798. The *Blanchard* rule applies only when the factual allegations within a single cause of action can independently support multiple counts of that cause of action; otherwise, the *Duracraft* test continues to govern.

[21]    We therefore turn to the pleadings here to determine whether the facts alleged could sustain multiple counts of Harassment and TIBR. For each counterclaim and third-party claim by AMT, there are three primary factual allegations. First, AMT alleges "several times in 2015 and 2016," Douglas approached AMT's "employees and customers, taking pictures of them, occasionally within inches of their faces, their vehicles and their license plates." *See* RA, tab 35 at 25, 33 (AMT's Answer). Second, AMT alleges Douglas "raised his hand to motion for [an AMT] employee to leave and in doing so, struck the employee." *Id.* at 27, 34. Third, AMT alleges it "was inspected by both the Guam Fire Department and the Guam Environmental Protection Agency for reported illegal business activity" *Id.* at 26. We agree with AMT these allegations do not give rise to multiple counts of Harassment and/or TIBR.[3] None of the allegations, taken in isolation, may be independently sufficient to establish a viable cause of action. Because no single allegation forms a complete separate basis for liability, the causes of action could not have readily been pleaded as separate counts; thus, the *Blanchard* rule does not apply. *See Blanchard*, 75 N.E.3d at 35.

[22]    But while the individual allegations within AMT's claims may not independently be sufficient to sustain a viable claim, the allegations as a whole may be enough to create liability under a "course of conduct" theory. *See Ayasli*, 780 N.E.2d at 936. As *Reichenbach* explains, a course of conduct claim is one "based on multiple or repeated acts that if taken individually

---

[3] At oral argument, AMT conceded that its allegations regarding the Moylans' acts of reporting did not create separate, independent causes of action, but merely provided evidence in support of its claims of Harassment and TIBR. *See* Oral Argument at 51:07-51:24 (Aug. 25, 2021).

would be insufficient to make out the claim but if taken collectively are sufficient to constitute threats, intimidation, or coercion." 90 N.E.3d at 798. Therefore, "[t]he claim is based on the fact pattern as a whole, not on isolated incidents, any one or more of which might be considered insufficient . . . when separated from the rest." *Id.*; *see also Ayasli*, 780 N.E.2d at 936. We read the pleadings at issue to similarly allege a course of conduct—and as *JACE Boston* shows, a course of conduct claim is properly analyzed under *Duracraft*. *See JACE Bos.*, 74 N.E.3d at 1246.

[23]    Consistent with our "course of conduct" interpretation of the pleadings, we also reject the Moylans' allusions to California law. The Moylans cite *Baral v. Schnitt*, 376 P.3d 604 (Cal. 2016), for the proposition that an anti-SLAPP motion may be used to strike the allegations of petitioning activity within a claim. *See* Appellants' Reply Br. at 2-6 (Apr. 7, 2021). The Moylans invite the court to adopt a similar construction of the CPGA, thereby permitting the Moylans to strike the allegations regarding Douglas's reports to government agencies without disturbing the other, non-petitioning allegations. *See id.* But *Baral* permits this striking procedure only when the allegations of petitioning activity form the basis of the alleged liability; allegations that "merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." 376 P.3d at 615. As later California cases have explained, the anti-SLAPP statute may be invoked to strike allegations providing the "basis for liability," but not allegations providing only "evidence of liability." *See Park v. Bd. of Trs. of Cal. State Univ.*, 393 P.3d 905, 907 (Cal. 2017); *Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1069 (Cal. 2021). Thus, a "claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Park*, 393 P.3d at 907; *see also Cho*, 2020 Guam 10 ¶ 8. We

interpret AMT's claims to allege a broad course of conduct. Douglas's act of reporting is not "*itself* the wrong complained of" by AMT—rather, this allegation is one piece of evidence supporting AMT's claim that the Moylans pursued an unlawful course of conduct, the ultimate "wrong complained of" by AMT. Thus, even if the court adopted the *Baral* striking procedure, the procedure would not aid the Moylans.

[24] The facts do not support application of the rules created by the *Blanchard* and *Baral* courts. We do not reject these rules in the abstract; we merely hold the rules inapplicable here. We do not foreclose the possibility these cases may yet be persuasive upon facts more similar to the facts of those cases. Here, however, neither case persuades the court to depart from, or create an exception to, *Cho* and *Duracraft*.

## V. CONCLUSION

[25] The trial court correctly applied *Cho*, 2020 Guam 10, and the *Duracraft* test it endorses. We decline to deviate from *Duracraft* because the rules submitted for our consideration are inapplicable to the facts of the case. We therefore **AFFIRM** the trial court's Decision and Order denying the Moylans' CPGA motion.

| | |
|---|---|
| /s/ | /s/ |
| ROBERT J. TORRES | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

/s/
F. PHILIP CARBULLIDO
Chief Justice