NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13788

LYNN ALLEGAERT, trustee,[1]  vs.  HARBOR VIEW HOTEL OWNER LLC
& others.[2]


Dukes County.     December 5, 2025. – March 25, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


"Anti-SLAPP" Statute.  Practice, Civil, Motion to dismiss,
     Counterclaim and cross-claim, Standing, Waiver.
     Constitutional Law, Right to petition government.  Zoning,
     Board of appeals:  decision, Special permit, Conditions,
     Person aggrieved.  Martha's Vineyard Commission.  Waiver.



Civil action commenced in the Superior Court Department on
May 1, 2023.

A special motion to dismiss was heard by Elaine M. Buckley,
J.

After review by the Appeals Court, 105 Mass. App. Ct. 1123
(2025), the Supreme Judicial Court granted leave to obtain
further appellate review.

_____

[1] Of the Lynn Allegaert Revocable Trust.

[2] Town of Edgartown and zoning board of appeals of
Edgartown.  When this matter was before the Appeals Court, the
municipal defendants filed a notice that they did not intend to
submit an appellate brief, and they have not submitted any
additional filings since the appeal was transferred to this
court.

A. Neil Hartzell (Ben N. Dunlap also present) for the plaintiff.

Kevin P. O'Flaherty (Mariana Korsunsky also present) for Harbor View Hotel Owner LLC.

The following submitted briefs for amici curiae:

Dana A. Curhan & Richard A. Goren for Jane Doe & another.

Kathleen M. Heyer for NAIOP Massachusetts, Inc.

Kimberly Kroha for Joseph Smith.

KAFKER, J.   In Bristol Asphalt Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 553 (2024) (Bristol Asphalt), this court significantly revised the framework for analyzing special motions to dismiss under our "anti-SLAPP" statute, G. L. c. 231, § 59H, and provided an extensive discussion of how it should be properly applied.  In the instant case, the analysis of both the motion judge and the Appeals Court deviated from that guidance, and we take this opportunity to clarify its proper application here.

The defendant in this appeal, Harbor View Hotel Owner LLC (Harbor View), asserted a counterclaim alleging that the plaintiff, Lynne Allegaert, abused process by commencing the underlying lawsuit.[3]  Allegaert responded by filing a special motion to dismiss, pursuant to G. L. c. 231, § 59H, arguing that

---

[3] At some point after April 2008, Allegaert transferred ownership of her property to the Lynne Allegaert Revocable Trust (trust), and the instant suit was commenced in Allegaert's capacity as trustee for that trust.  For simplicity, we shall refer to the plaintiff as Allegaert, except where otherwise noted.

the counterclaim targeted her for engaging in her constitutional right to petition the courts. A judge in the Superior Court (motion judge) denied Allegaert's motion. The motion judge agreed that the abuse of process counterclaim was based solely on Allegaert's act of petitioning the court, but concluded that the counterclaim need not be dismissed because Allegaert's petitioning activity (i.e., her lawsuit) was devoid of any merit. Allegaert then appealed.

On appeal, the parties do not dispute that Allegaert met her threshold burden of demonstrating that the abuse of process counterclaim was based solely on her petitioning activity, or that, pursuant to the Bristol Asphalt framework, the burden then shifted to Harbor View to establish, by a preponderance of the evidence, that Allegaert's lawsuit "was devoid of any reasonable factual support or any arguable basis in law." Bristol Asphalt, 493 Mass. at 557, quoting G. L. c. 231, § 59H. The parties do, however, dispute whether the motion judge misapplied that standard, and whether Harbor View met its burden. When this matter came before the Appeals Court, a panel of the court stated that it could not "conclude at this stage of the proceedings that Allegaert's claims lack any reasonable factual support or any arguable basis in law" as the "challenged claims in the lawsuit have not been resolved." See Allegaert v. Harbor View Hotel Owner, LLC, 105 Mass. App. Ct. 1123 (2025)

(unpublished memorandum and order pursuant to Appeals Court Rule 23.0).  In so doing, the panel short-circuited the required analysis that we recently clarified in Bristol Asphalt.

Regardless of whether Allegaert's lawsuit remains ongoing, it constitutes petitioning activity, and our anti-SLAPP statute explicitly provides that a counterclaim targeting that act of petitioning must be dismissed unless the petitioning activity "was devoid of any reasonable factual support or any arguable basis in law."  G. L. c. 231, § 59H.  As we explained in Bristol Asphalt, this presents a significant hurdle.  However, that hurdle is not insurmountable, and we have provided guidance to litigants about the ways in which this standard can be, and has been, met in particular cases.  See Bristol Asphalt, 493 Mass. at 557-560, and cases cited.

Here, the party who filed the abuse of process counterclaim, Harbor View, had the burden to make this showing in order to defeat Allegaert's special motion to dismiss the counterclaim.  Because we conclude, unlike the motion judge, that Harbor View has not demonstrated that all of the claims raised in Allegaert's lawsuit are frivolous, Harbor View failed to meet this burden.  In doing so, we arrive at the same conclusion as the Appeals Court panel, but apply the proper

analysis.  Accordingly, we reverse the order of the Superior Court denying the special motion to dismiss.[4]

1.  Factual background.  We recite the facts based upon the pleadings and attached documentary evidence provided below, reserving certain facts for our analysis.  See Bristol Asphalt, 493 Mass. at 542.

This dispute concerns the planned construction of a new cottage in connection with Harbor View's operation of a hotel on Martha's Vineyard.  The hotel, which first opened in 1891, is located in an area of Edgartown (town) that was later zoned for residential use, and the hotel is recognized as a preexisting nonconforming commercial use.  In 2008, Harbor View's predecessor in interest, Scout Harbor View Property 1, LLC (Scout), made plans to begin a significant renovation and construction project on the property.  As part of this project, Scout intended to build additional cottages and expand the footprint of the hotel campus.  Toward that end, Scout applied in 2008 for a special permit authorizing the expansion of the preexisting nonconforming use of the property (2008 application).

At or around the same time Scout submitted the 2008 application, it also entered into an agreement with Allegaert,

---

[4] We acknowledge the amicus briefs submitted by Joseph Smith, Jane and John Doe, and NAIOP Massachusetts, Inc.

the owner of a residential property abutting the hotel.[5]  Under the terms of the agreement, Scout agreed (inter alia) to install, at its own expense, "a dense landscaping screen at a height sufficient to block views" between Allegaert's property and the new cottages prior to allowing any guest occupancy therein, pursuant to a landscaping plan attached to the agreement.  The landscaping plan was to "be maintained in perpetuity by [Scout], its successors and assigns."  Scout also agreed to "make all other reasonable efforts to ensure that the construction and use of the [hotel] property . . . will not cause any additional light pollution, noise pollution, allow guests on the property views into [Allegaert]'s property or otherwise infringe on [Allegaert]'s ability to quietly enjoy her property."  In exchange, Allegaert agreed to "support any and all permitting by [Scout] for the property in the form of [submitting] one letter of support" to the relevant permitting authorities, including the Martha's Vineyard Commission (commission) and the town's zoning board of appeals (board). Allegaert, along with any "heirs, successors and assigns," also agreed to waive "any and all rights of appeal from any" permitting decision, "so long as the impacts from [Scout]'s

---

[5] At some point after this agreement was signed, ownership of the residential property was transferred to the trust.  See note 3, supra.

redevelopment and renovation plans as proposed for the [hotel] are substantially the same, less than or reduced compared to the impacts from those plans" as they were proposed to Allegaert. The agreement further specified that it could "not be recorded or registered without the written consent of both parties," and that any dispute arising under the agreement would be subject to binding mediation.  Attached to the agreement was a copy of the landscaping plan, which depicted the anticipated location of new vegetative screening along the parties' shared property line and in front of one of the new cottages, labeled "Cottage 11," which later came to be known as Pease Cottage.[6]

In accordance with the terms of the agreement, Allegaert submitted a letter supporting Scout's project to the commission and testified at a public hearing on the matter.  The commission went on to issue a written decision approving the proposal, in which it found, inter alia, that Scout had "worked with its neighbors and . . . apparently addressed their concerns."  The commission imposed various conditions in connection with its decision, including one that specified "landscaping shall include extensive screening between the subject property and the abutting properties to continue to provide its neighbors [sic]

_____

[6] The landscaping plan also depicts another cottage, labeled "Cottage 10," in proximity to Allegaert's property.  However, plans to construct this cottage were abandoned in 2018.

privacy."  Later the same year, the board voted to grant Scout's application for a special permit (2008 special permit), and incorporated all of the conditions contained within the commission's decision (2008 decision).

In or around January 2018,[7] Harbor View purchased the hotel. Thereafter, Harbor View sought to change the planned construction project in certain respects, and representatives of Harbor View met with Allegaert to review the proposed modifications.  The revised plan called for the size of the Pease Cottage to be increased by approximately 2,000 square feet, along with various other changes.  Harbor View submitted an application to the board requesting to modify the special permit to incorporate these proposed changes (2018 application), and Allegaert once again provided a letter of support.  On August 15, 2018, the board voted to approve the 2018 application, thereby authorizing Harbor View's requested modifications to the 2008 special permit (2018 decision).  This decision specified that the conditions imposed by the commission in 2008 "are still in effect," in reference to (inter alia) the

_____

[7] The amended complaint alleges that Harbor View acquired the hotel's assets on October 19, 2017.  In its answer, Harbor View admits that it acquired the property "as described" in this paragraph of the amended complaint, but goes on to assert that the "Hotel Property was purchased by its current ownership" in January 2018.  This minor discrepancy is immaterial to our analysis.

condition requiring extensive screening of the hotel property from abutting properties.

Nine months later, in May 2019, Allegaert noticed that the existing vegetative screening along her property line with the hotel, which served to block the hotel property from view of her residence, had been removed.  In a letter submitted to the board, Allegaert indicated that while Harbor View agreed to replant a "zig rag" row of arborvitae trees, only "one row of small cedars spaced far apart" was initially installed, "but not the second row [they] had agreed upon."  After what Allegaert described as a "very long and heated conversation" with the owner of Harbor View, the owner eventually agreed to install the second row of trees, although Allegaert's letter went on to express concerns to the board relating to her "now exposed fence line."

The following year, Harbor View submitted a request for a second modification of the special permit (2020 application), after a fire broke out that caused extensive damage to one of the hotel buildings under renovation.  The 2020 application proposed, inter alia, that the planned location of the Pease Cottage be moved approximately twenty-five to thirty feet to the west and five to ten feet to the south, and that the square footage of the building be reduced by 286 square feet.  Unlike in 2008 and 2018, when Allegaert had submitted letters of

support of the planned construction, she publicly voiced opposition to the 2020 application in proceedings before the board. At a public hearing, Allegaert requested that the board require Harbor View to abide by the terms of the 2008 agreement, and stated that, "without adequate screening[,] the Pease Cottage will destroy her privacy and loom over her backyard patio and pool." In response, a representative for Harbor View told the board of the arborvitae trees that Harbor View had already installed along its shared boundary with Allegaert's property, and stated that he "was surprised and confused" by Allegaert's comments. One member of the board went on to express interest in learning more about Allegaert's screening concerns, but the board declined to reopen the public portion of the hearing and subsequently approved the modification (2023 decision). In voting to do so, one member of the board stated that "he believed the Harbor View had done its best to screen the property and ensure the privacy of its neighbors."

2. <u>Procedural history</u>. On May 8, 2023, Allegaert filed an amended complaint seeking to appeal from the 2023 decision. Allegaert's amended complaint also asserted claims against Harbor View for breach of contract, nuisance, and infliction of emotional distress, as well as a quasi contract claim based on a theory of "[d]etrimental [r]eliance/[p]romissory [e]stoppel/[u]njust [e]nrichment." Harbor View responded by

filing an amended counterclaim for abuse of process, in which it alleged that Allegaert had commenced suit to "harass and burden the [h]otel . . . with frivolous and vexatious claims."[8]

Thereafter, Allegaert filed a special motion to dismiss Harbor View's counterclaim, pursuant to G. L. c. 231, § 59H.  A judge in the Superior Court denied Allegaert's motion, concluding that while the abuse of process claim was based solely upon Allegaert's petitioning activity, Harbor View had met its burden of showing that Allegaert's petitioning (i.e., lawsuit) was a sham.[9]  The motion judge reasoned that, "despite [Allegaert's] professed statements to the contrary," her first claim was "essentially an omnibus appeal" from the 2008, 2018, and 2023 decisions.  The motion judge reasoned that because the 2023 decision "relate[d] directly back to the prior permitting" authorized by the board in 2008 and 2018, from which Allegaert never appealed, her appeal from the 2023 decision was untimely. The motion judge similarly concluded that Allegaert's contract and quasi contract claims "fare no better" because the agreement

---

[8] Initially, Harbor View also raised a counterclaim for malicious prosecution against Allegaert.  However, Harbor View omitted this cause of action from its amended counterclaim.

[9] Allegaert also moved to dismiss Harbor View's counterclaim pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). That motion was denied as well, but the propriety of that ruling is not before us in this interlocutory appeal.  See Haverhill Stem LLC v. Jennings, 99 Mass. App. Ct. 626, 630 n.8 (2021).

she entered into with Scout was not binding on Harbor View, and the amended complaint "fails to identify any promise, outside of the Scout Agreement which would be a basis for her equitable claims." Finally, the motion judge concluded that Allegaert's claims for nuisance and emotional distress were not "actionable at this time" because they concerned future damages and were therefore "not ripe for review." Allegaert subsequently filed a notice of appeal from the motion judge's ruling. See Fabre v. Walton, 436 Mass. 517, 521-522 (2002), S.C., 441 Mass. 9 (2004) (litigants may seek interlocutory appellate review from denial of special motion to dismiss).

A panel of the Appeals Court reversed the denial of Allegaert's motion in an unpublished decision. See Allegaert, 105 Mass. App. Ct. 1123. The panel, quoting Hidalgo v. Watch City Constr. Corp., 105 Mass. App. Ct. 148, 153 (2024), observed that "[c]laims for abuse of process 'must ordinarily await the outcome of the lawsuit that they are challenging.'" The panel went on to conclude that the abuse of process counterclaim must be dismissed, stating, without further analysis, that the "claims in [Allegaert's] lawsuit have not been resolved, and we cannot conclude at this stage of the proceedings that Allegaert's claims lack any reasonable factual support or any arguable basis in law." We subsequently granted Harbor View's application for further appellate review.

3.  Discussion.  a.  Bristol Asphalt framework.  The so-
called anti-SLAPP statute[10] was enacted in response to the
problem of frivolous "lawsuits directed at individual citizens
of modest means for speaking publicly against development
projects."  Duracraft Corp. v. Holmes Prods. Corp., 427 Mass.
156, 161 (1998) (Duracraft).  To facilitate the early dismissal
of meritless claims of this nature, the statute established a
procedure whereby a party may file a special motion to dismiss
any "civil claims, counterclaims, or cross claims" that have
been filed against him or her that "are based on" the exercise
of his or her right of petition, as defined by the statute.
G. L. c. 231, § 59H.  See Bristol Asphalt, 493 Mass. at 540-541.
In order to prevent these special motions to dismiss, and the
powerful procedural protections they afford to litigants, from
being misused to quell petitioning activity, our jurisprudence
has adopted "a necessarily narrow and strict construction of the
statute."  Id. at 555.  This has resulted in the development of
a two-stage, burden-shifting framework for analyzing the merits
of a special motion to dismiss filed under G. L. c. 231, § 59H.
See Bristol Asphalt, supra at 555-559.[11]

_____

[10] The acronym "SLAPP" stands for "Strategic Litigation
Against Public Participation" (citation omitted).  Bristol
Asphalt, 493 Mass. at 547.

[11] Although the special motion to dismiss at issue in this
case was denied prior to Bristol Asphalt, we apply the revised

Recently, in Bristol Asphalt, 493 Mass. at 542, this court revised that framework.[12]  At the first stage of the revised framework, the party seeking dismissal of a claim (i.e., the special motion proponent) has a threshold burden to show that the challenged claim is based solely on his or her exercise of the right to petition, with no substantial basis other than or in addition to those petitioning activities.  Id. at 555-556. If the special motion proponent cannot make this showing, the motion is denied, and the challenged claim survives.  Id. at 556.  However, if the special motion proponent does make this showing, the court moves to the second stage of the framework, where the burden shifts to the opponent of the special motion to dismiss, i.e., the party who is seeking to avoid dismissal of his or her claim.  Id. at 556-557.

At the second stage, a special motion opponent must show, by a preponderance of the evidence, that the petitioning activity the opponent complains of "was devoid of any reasonable factual support or any arguable basis in law" and caused the

_____

framework set forth in that decision because this appeal was pending at the time of its issuance.  See Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 577–578 (2024) (explaining that Bristol Asphalt framework is applicable to anti-SLAPP appeal pending at time rescript issued).

[12] In that decision we also provided an Appendix visually summarizing the requisite analysis, in order to facilitate its practical administration.  See Bristol Asphalt, 493 Mass. at 569 (Appendix).

opponent "actual injury" in order for the challenged claim to survive. Bristol Asphalt, 493 Mass. at 557, quoting G. L. c. 231, § 59H. See Bristol Asphalt, supra at 559-560 (explaining that "our jurisprudence has tended to equate [this] standard . . . with the concept of frivolousness" [quotation and citation omitted]). Notably, unlike a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), this analysis "is focused exclusively on the [proponent's] petitioning activity," rather than the legal merits of the special motion opponent's claims. Bristol Asphalt, supra at 550. Unless the special motion opponent can show that the proponent's "petitioning activity was devoid of any reasonable basis in fact or law, the opponent's claims -- regardless of their underlying merits -- must be dismissed" (quotations and citation omitted). Id.

The second stage imposes a "high bar" for a special motion opponent seeking to avoid dismissal of his or her claim (citation omitted). Bristol Asphalt, 493 Mass. at 558. The special motion opponent must, in effect, show that the other party's petitioning activity was a "sham." Id. at 566. In assessing whether this burden has been met, "[t]he question to be determined . . . is not which of the parties' pleadings and affidavits are entitled to be credited or accorded greater weight," but whether there was no reasonable factual support or

arguable legal basis for the petitioning activity being complained of. Id. at 557-558, quoting Benoit v. Frederickson, 454 Mass. 148, 154 n.7 (2009).

Because both prongs of this analysis "involve application of a legal standard to documentary evidence alone," on appeal we review the denial of a special motion to dismiss de novo. Bristol Asphalt, 493 Mass. at 561-562.

b. Allegaert's threshold burden. In the underlying case, Allegaert filed a special motion to dismiss Harbor View's abuse of process counterclaim. As the special motion proponent, Allegaert thus had the threshold burden to show that this counterclaim was based solely on Allegaert's exercise of her right to petition, with no other substantial basis. See Bristol Asphalt, 493 Mass. at 555-556. The counterclaim alleges that Allegaert "has abused process by commencing the [underlying] [l]awsuit . . . to harass and burden the [h]otel and its ownership with frivolous and vexatious claims." As both parties recognize, commencing a lawsuit is a quintessential example of engaging in petitioning activity. See 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 520 (2019) (Harrison II). Allegaert has therefore met her first stage burden.

c. Harbor View's second stage burden. Because Allegaert met her threshold burden, the burden shifted to Harbor View, the opponent of the special motion to dismiss. As the special

motion opponent, Harbor View was required to demonstrate, by a preponderance of the evidence, that Allegaert's petitioning activity was devoid of any reasonable factual support or any arguable basis in law.  See Bristol Asphalt, 493 Mass. at 557-558.  As indicated, the petitioning activity at issue is Allegaert's act of commencing suit.  Her lawsuit cannot be considered "devoid" of any reasonable factual support or arguable legal basis if any of her claims are not frivolous.  See id. at 557; 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 175 (2017) (Harrison I), S.C., 483 Mass. 514 (2019).

In considering the applicability of this standard below, the Appeals Court panel reasoned:

> "[T]he . . . claims in [Allegaert's] lawsuit have not been resolved, and we cannot conclude at this stage of the proceedings that Allegaert's claims lack any reasonable factual support or any arguable basis in law.  Thus, we conclude that Allegaert's special motion to dismiss Harbor View's counterclaim should have been allowed."

The panel reached this conclusion without any further analysis of the factual or legal basis for Allegaert's petitioning activity.

The Appeals Court panel is correct that, at the time the special motion to dismiss was filed, the motion judge did not have the benefit of knowing how the petitioning activity concluded because the petitioning being complained of -- Allegaert's lawsuit -- is still ongoing.  However, this does not

mean that the court can short-circuit its application of the anti-SLAPP framework. Importantly, the question to be resolved is not whether Allegaert's lawsuit will ultimately prove to be successful. See Donovan v. Gardner, 50 Mass. App. Ct. 595, 601 (2000) (mere fact that petitioning activity was "unsuccessful does not, in and of itself, mean that [petitioning] did not have some basis in law or foundation in fact").[13]

Rather, the court must consider whether Harbor View has demonstrated that, by commencing this lawsuit, Allegaert engaged in a petitioning activity that was "'devoid' of any reasonable factual support or any arguable basis in law." Bristol Asphalt,

---

[13] To be sure, the ultimate result of a petitioning activity can reflect whether it was devoid of any factual or legal merit. For instance, if a special motion opponent seeks to impose liability on someone for commencing a lawsuit that ultimately proved to be successful, it is self-evident that the special motion opponent cannot meet its burden. See, e.g., Fabre, 436 Mass. at 524-525 (because final judgment entered issuing restraining order under G. L. c. 209A, and there had been no successful appeal or collateral attack, judgment was "conclusive evidence that the petitioning activity [(i.e., act of seeking restraining order)] was not devoid of any reasonable factual support or arguable basis in law"). Other rulings or developments in the lawsuit may also illustrate whether it lacked reasonable factual support or an arguable legal basis. See Demoulas Super Mkts., Inc. v. Ryan, 70 Mass. App. Ct. 259, 264-265 (2007) (where court had denied motion for attorney's fees under G. L. c. 231, § 6F, on sole ground that lawsuit was not wholly insubstantial and frivolous, that was equivalent to determination that suit was not devoid of reasonable factual support or arguable legal basis). See also SMS Fin. V, LLC v. Conti, 68 Mass. App. Ct. 738, 746-747 (2007) ("something that has been established by a preponderance of the evidence cannot be devoid of any reasonable factual support or arguable basis in law" [citation omitted]).

493 Mass. at 557.  In making this assessment, the court's focus is on the cognizable basis for Allegaert's petitioning activity. See id. at 550.  As with any other type of claim, an abuse of process counterclaim targeted at legitimate petitioning activity "rais[es] the specter of mounting liability for defense costs and other damages associated with the ongoing litigation." Harrison II, 483 Mass. at 528 ("Viewed objectively, a defendant's primary motivation in that circumstance is to burden the plaintiff's petitioning rights by hanging the possibility of ever-increasing liability, like the sword of Damocles, over the plaintiff's head").

Of course, "we must always be aware that both proponents and opponents of special motions to dismiss are engaged in petitioning activity, requiring courts to proceed cautiously when the protection of a proponent's petitioning activity interferes with an opponent's own legitimate petitioning rights."  Bristol Asphalt, 493 Mass. at 554.  Here, Harbor View is exercising its own right of petitioning by raising a counterclaim for abuse of process.  To be sure, such abuse of process claims "will always be, at least in part, based on a special [motion proponent]'s petitioning activities."  Harrison I, 477 Mass. at 169.  And if such claims are based solely on petitioning activity, the special motion proponent will have satisfied its threshold burden, rendering the claims "prima

facie subject to dismissal under the anti-SLAPP statute,"
Hidalgo, 105 Mass. App. Ct. at 151, if the special motion
opponent cannot meet its second stage burden.  However, proper
application of the anti-SLAPP framework does not mean that all
such claims will be subject to dismissal under § 59H.  See
Keystone Freight Corp. v. Bartlett Consol., Inc., 77 Mass. App.
Ct. 304, 313 (2010) ("We must interpret and apply the anti-SLAPP
statute and our case law in such a way as to continue to permit,
where appropriate and consistent with the intent of § 59H,
claims of abuse of process as delineated by the Massachusetts
common law").

As indicated, an abuse of process claim will not be
dismissed under G. L. c. 231, § 59H, where the special motion
opponent "alleges that the [special motion proponent] engaged in
any conduct germane to [the] abuse of process claim, apart from
[the] invocations of process, which can provide a 'substantial
basis' for [the] claim." Harrison I, 477 Mass. at 169.  Indeed,
we have previously highlighted a number of examples where an
abuse of process claim was not, or would not be, based solely on
the special motion proponent's petitioning activities.  See,
e.g., id., and cases cited.  See also id. at 171 n.9 (allegation
that special motion proponent stated that "he would continue
invoking process unless the [special motion opponent] paid him a
certain amount of money -- i.e., made a statement in an attempt

to extort the [opponent] through his use of process -- could provide a substantial nonpetitioning basis" for abuse of process claim); Keystone Freight Corp., 77 Mass. App. Ct. at 316 (abuse of process claim was not based solely on special motion proponent's petitioning activity, but also on proponent's fraudulent billing practices prior to commencement of collection action).

When a defendant files an abuse of process counterclaim that is based solely on the plaintiff's act of commencing the underlying suit, however, the court must assess whether the defendant has shown that the lawsuit is devoid of any reasonable factual support or any arguable legal basis to determine whether the counterclaim can survive a special motion to dismiss. See Columbia Plaza Assocs. v. Northeastern Univ. 493 Mass. 570, 577 (2024). If the underlying lawsuit is frivolous on its face, the abuse of process counterclaim will survive. By contrast, if the abuse of process counterclaim targets the underlying lawsuit despite there being reasonable factual support and an arguable legal basis for the suit, the special motion to dismiss must be granted. In any event, the court may not skip over or sidestep this analysis merely because it does not yet know the outcome of the underlying lawsuit. Indeed, the case that the Appeals Court panel cited and quoted in support of its own abbreviated approach, Hidalgo, 105 Mass. App. Ct. at 154, is one in which

the Appeals Court did appropriately analyze whether the special motion opponents had met their burden of establishing the absence of factual support or arguable legal basis for the underlying lawsuit, notwithstanding the pendency of that lawsuit. The Appeals Court in Hidalgo concluded that the special motion opponents had not met their burden because the pleadings that they relied upon (namely, their answer and counterclaim) did "not actually provide evidence that contradicts [the special motion proponent's] key factual allegation that he worked for six weeks." Id. at 152-153.

With these considerations in mind, we turn now to the question whether Harbor View has met its burden of demonstrating that Allegaert's lawsuit is devoid of any reasonable factual support or arguable legal basis. We begin by examining count one of Allegaert's amended complaint, in which she seeks to appeal from the 2023 decision of the board. Harbor View contends that this claim lacks any such factual or legal basis for three independent reasons: (1) the claim constitutes a collateral, time-barred attack on the board's prior permitting decisions; (2) the claim is legally and factually unsupported; and (3) Allegaert cannot establish standing to contest the decision. We examine each contention in turn.

i. Challenge to 2023 decision as collateral attack on prior decisions. Count one of Allegaert's amended complaint

alleges that construction of the Pease Cottage, located "in close proximity to [Allegaert's] home," will increase noise and light pollution at night and "greatly diminish" her privacy within the residential neighborhood by enabling occupants of the cottage to look over the existing vegetative screening onto her property. As Harbor View highlights, construction of the Pease Cottage had already been authorized by the 2008 special permit, and previously modified in 2018, each time with Allegaert's express support. Noting this fact, the motion judge characterized Allegaert's claim as "essentially an omnibus appeal" from all three decisions, and concluded that it was therefore untimely.

On its face, count one raises a challenge to the board's 2023 decision. The amended complaint references findings made by the board in the 2023 decision, alleges that those findings were deficient, and attaches a copy of that decision. Although the motion judge observed that the 2023 decision "relates directly back" to the 2008 and 2018 decisions, which also authorized construction of the Pease Cottage being complained of in the amended complaint, the motion judge was required "to consider alleged facts beyond the plaintiff's initial pleading . . . to determine whether the plaintiff's claims are devoid of a factual or legal basis." Ferguson v. Maxim, 96 Mass. App. Ct. 385, 390 (2019) (discussing differences between motion to

dismiss under Mass. R. Civ. P. 12 [b] [6], and special motions to dismiss under anti-SLAPP statute and analogous lis pendens statute, G. L. c. 184, § 15 [c]).

Notwithstanding the somewhat generalized language in the amended complaint, Allegaert's filings indicate that her appeal is not rooted solely in the board's authorization for the Pease Cottage, as proposed and approved in 2008 and 2018. Rather, as is indicated elsewhere in her amended complaint and the underlying record, the cottage's location was moved, the vegetation screening her property from the proposed cottage was removed without notice, and the nature of the replaced vegetative screening, which was of utmost importance to Allegaert, had changed in 2019.[14]

When the Pease Cottage was first proposed in 2008, the commission found that the planned development would have a "minimal overall effect upon other persons," noting that Harbor View's predecessor in interest, Scout, "ha[d] worked with its neighbors and ha[d] apparently addressed their concerns." The

_____

[14] In addition to alleging that the existing vegetation had been removed, Allegaert's amended complaint attached a copy of the 2023 decision, which references the relocation of the Pease cottage as well as Allegaert's concerns about the inadequacy of the screening. Indeed, the documentation that Harbor View attached to its own opposition to the special motion to dismiss includes a letter that Allegaert submitted to the board in 2019 that details the removal and replacement of the vegetation, leaving her with what she described as a "now exposed fence line."

commission also indicated that various conditions formed "an essential part" of its decision, including a requirement that landscaping provide "extensive screening between the subject property and the abutting properties to continue to provide its neighbors privacy." This condition was incorporated into the board's 2008 decision to grant the special permit, and the board's 2018 decision similarly indicated that all of the 2008 conditions were "still in effect."

By the time of the 2023 decision, however, things had changed according to Allegaert. Per the 2023 decision, the cottage's proposed location had been moved. In 2019, Harbor View also unilaterally removed existing vegetative screening between the two properties. Although arborvitae trees were installed to replace the vegetation that had been removed, Allegaert argues that these trees will not be adequate to screen all three stories of the Pease Cottage from view once it is built in its new location.[15] Indeed, Allegaert raised such

---

[15] The parties dispute the significance of the new location of the Pease Cottage. As Harbor View observes, the new location is slightly further away from Allegaert's property. By contrast, counsel for Allegaert asserted at oral argument that this location places the cottage in an area with less coverage relative to Allegaert's property line. This latter argument does not appear to have been raised in the underlying proceedings and is therefore not properly before us. That said, Harbor View's site plan from 2018 (which appears to be the only site plan in the record that is based on a satellite image) does depict thinner vegetation within this area of the property line, although this image predates the vegetative changes in 2019. In

concerns at the public hearing before the board in 2023.  Given that these developments postdate the 2008 and 2018 decisions, Harbor View has not shown that Allegaert lacked an arguable legal basis to assert that her appeal constituted more than a time-barred challenge of those prior decisions.

ii.  <u>Merits of Allegaert's challenge to 2023 decision</u>. Harbor View further contends that, even insofar as count one of Allegaert's complaint is not considered a collateral attack on the 2008 and 2018 decisions, there is no basis for her factual assertions about the inadequacy of the existing vegetative screening.  It is undisputed that Allegaert appeared at the public hearing before the board in 2023 to express her belief that the existing vegetative screening was inadequate.  A letter that Allegaert submitted to the board in 2019 also details her account of the removal of the existing vegetation and the eventual planting of the arborvitae trees, which she described as leaving her with a "now exposed fence line."  To rebut these characterizations, Harbor View submitted two photographs depicting the arborvitae trees in the underlying proceedings.

Both of Harbor View's photographs appear to have been taken at relatively close range, from positions that are angled toward

---

any event, for the reasons discussed, it remains apparent that there is a colorable argument that Allegaert's challenge to the 2023 decision does not merely seek to relitigate issues resolved by the board's prior permitting decisions.

Allegaert's property line, but do not face the property directly. It is difficult to discern the adequacy of the vegetative screening from this vantage point, and whether it would be sufficient to screen the three-story construction of Pease Cottage. According to an affidavit submitted by Harbor View, these photographs depict "some of [the] arbor vitae trees" that were planted, suggesting that they do not depict the entirety of the parties' shared property line. The affidavit does not indicate where the photographs were taken, and whether they correspond to the particular area where Pease Cottage will be erected. Given these shortcomings, we cannot say that these photographs suffice to establish the absence of any reasonable factual support for Allegaert's contention that her property is not adequately screened from the new location of Pease Cottage. See Bristol Asphalt, 493 Mass. at 558 ("material, disputed credibility issues may not be resolved in the special motion opponent's favor"). Insofar as a member of the board in the 2023 decision found that Harbor View "had done its best to screen the property and ensure the privacy of its neighbors," that finding does not establish that there is no reasonable factual support for Allegaert's assertions. Cf. E & J Props., LLC v. Medas, 464 Mass. 1018, 1019 (2013) (court reviews factual findings de novo in appeal pursuant to G. L. c. 40A, § 17,

without affording evidentiary weight to factual findings contained within board's decision).

We reach a similar conclusion with respect to Harbor View's argument that Allegaert cannot establish that she is entitled to relief from the board's 2023 decision. Again, the question before us is not whether Allegaert will ultimately prevail on her claims, or even whether her lawsuit raises claims that would survive a motion to dismiss under Mass. R. Civ. P. 12 (b) (6). Our review is instead limited to the question whether Harbor View has established by a preponderance of the evidence that the lawsuit is devoid of any reasonable factual support or any arguable basis in law. See Wenger v. Aceto, 451 Mass. 1, 7 (2008) ("The critical determination is not whether the petitioning activity in question will be successful, but whether it contains any reasonable factual or legal merit at all").

The 2008 special permit incorporated the conditions imposed by the commission, which called for "extensive screening between the subject property and the abutting properties" for the purpose of "continu[ing]" to provide those abutters with privacy. These conditions were also incorporated into the subsequent modification of the special permit in 2018. Allegaert has at least an "arguable" legal basis to challenge the 2023 decision, given that the 2023 decision was based on the finding that the proposed modifications would "not be more

objectionable or detrimental to the character of the neighborhood" than the modifications approved in 2018, which expressly incorporated the conditions of the 2008 decision, including the requirement to screen abutting properties from view. The 2023 decision noted that the total size of the Pease Cottage was being reduced, but did not address the apparent changes to the nature of the vegetation along the property line that Allegaert alleges provide inadequate screening at the cottage's proposed new location. See O'Gara v. St. Germain, 91 Mass. App. Ct. 490, 499-500 (2017) ("as long as a reasonable person could conclude there was a legal basis for the petitioning activity, the party opposing the [special] motion to dismiss has failed to meet his legal burden to demonstrate that the petitioning activity lacked any basis in law").

iii. Standing to appeal from 2023 decision. We need not dwell long on Harbor View's final argument that Allegaert lacks standing to challenge the 2023 decision. As an initial matter, Harbor View did not raise this argument below. Although Harbor View's answer to the amended complaint asserted lack of standing as an affirmative defense, Harbor View made no argument concerning Allegaert's standing in its opposition to the special motion to dismiss. Nor did counsel for Harbor View raise any such argument at the motion hearing. Accordingly, the argument has been waived.

Moreover, because Allegaert is an abutter,[16] she enjoys a rebuttable presumption of standing. See 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 700-701 (2012) (although plaintiffs "always bear[] the burden of proving aggrievement necessary to confer standing," rebuttable presumption afforded to abutters places "the initial burden" on opposing party to present evidence challenging abutter's presumption of standing). Allegaert further alleged in her amended complaint that she is aggrieved by the 2023 decision because construction of the Pease Cottage will increase "the noise, light pollution at night[,] and restrict sunshine during the day." Although an abutter's rebuttable presumption of standing "recedes when a defendant challenges a plaintiff[] [abutter's] status as an aggrieved person and offers evidence supporting his or her challenge," Watros v. Greater Lynn Mental Health & Retardation Ass'n, 421 Mass. 106, 111 (1995), Harbor View made no attempt to do so in the proceedings below. Given Allegaert's rebuttable presumption of standing, as well as her allegations of aggrievement that Harbor View made no attempt to rebut, Harbor View has fallen far short of demonstrating that there could be no reasonable factual support or arguable legal

---

[16] As noted by Harbor View, although Allegaert no longer owns the property, she has brought this suit in her capacity as trustee for the trust that does. See note 3, supra.

basis for Allegaert's standing to raise the underlying claim.
Cf. Demoulas Super Mkts., Inc. v. Ryan, 70 Mass. App. Ct. 259,
263-264 (2007) (rejecting argument that dismissal of certiorari
action seeking review of decision issued under local wetlands
bylaw for lack of subject matter jurisdiction was, "per se,
tantamount to a determination that the action [was] devoid of
reasonable factual support or arguable basis in law," because
question of jurisdiction depended on particular circumstances of
case and interrelationship between State and municipal laws,
which "may, in some circumstances, be a fairly nuanced
question").

4. Conclusion. Because we conclude that Harbor View has
failed to meet its burden with respect to count one of
Allegaert's amended complaint, Harbor View has not demonstrated
that the underlying lawsuit is devoid of any reasonable factual
support or arguable legal basis. In light of this conclusion,
we need not analyze the factual support or legal basis for the
other claims raised in Allegaert's lawsuit, and do not address
whether Harbor View met its additional burden of establishing
actual injury. See Harrison I, 477 Mass. at 175; Hanover v. New
England Regional Council of Carpenters, 467 Mass. 587, 597 n.13
(2014). Accordingly, the Superior Court order denying
Allegaert's special motion to dismiss Harbor View's amended
counterclaim is reversed, and the matter is remanded to the

Superior Court for further proceedings consistent with this opinion, including a determination as to the appropriate award of attorney's fees in connection with the special motion to dismiss.[17]

*So ordered.*

---

[17] Allegaert has also requested an award of attorney's fees and costs in connection with this appeal.  In light of our conclusion that the special motion to dismiss should have been allowed, Allegaert is entitled to such costs and may apply for the same using the procedure established by Fabre, 441 Mass. at 10-11.  See Columbia Plaza Assocs., 493 Mass. at 589-590.